68184. FORD et al. v. ROLLINS PROTECTIVE SERVICES COMPANY.

POPE, Judge.

On October 9, 1978 plaintiff-appellant Sarah Ford signed an "Installation-Service Agreement" with defendant-appellee Rollins Protective Services Company ("Rollins") providing for the installation and maintenance of a protective alarm system in a restaurant, "Mama's Soul Food," owned and operated by Mrs. Ford and her husband, plaintiff-appellant William Ford. Under the agreement, appellants agreed to pay the installation cost of the system, $1,920, along with a monthly charge of $38.40 for maintenance and service for a period of three years. Appellants financed the major portion of the installation cost with appellee by separate agreement calling for payments to be made in thirty-six consecutive monthly installments. The agreement stated that if appellants allowed the account to be in default for a period of sixty days from the due date, that Rollins had the option to enter appellants' premises, take possession and remove the system. Appellants made a partial payment on the account on July 23, 1981. As of October 5, 1981, Rollins had received no additional payment. Due to this default in payment, on October 5, 1981 an authorized Rollins employee entered appellants' restaurant and removed the alarm system control box, rendering useless the remaining parts of the system.

Appellants brought suit against Rollins in two counts: in Count I alleging that Rollins had retained a security interest in the system and had wrongfully repossessed it through breach of the peace, as well as failing to comply with OCGA § 11-9-504; in Count II alleging

Rollins' actions to be in violation of the Uniform Deceptive Trade Practices Act, OCGA § 10-1-372 (a) (12). Rollins filed its answer denying the allegations of the complaint and a counterclaim, later amended, seeking to recover amounts remaining and due on appellants' account. After discovery, a trial was had before a jury. At the close of appellants' evidence, Rollins moved for and was granted a directed verdict both on appellants' claims and on the counterclaim. Appellants appeal the verdict directed in favor of Rollins.

1. Initially we address appellants' assertion that the trial court erred in directing a verdict as to whether Rollins violated the Uniform Commercial Code by the manner of repossession and subsequent failure to dispose of the equipment after default and repossession. A directed verdict in Rollins' favor on these claims was based upon the trial court's conclusion that the "Installation-Service Agreement" was a true lease rather than a security agreement. Therefore, those provisions of the UCC relied upon by appellant are not applicable to the transaction between appellants and Rollins. We agree.

Article 9 of the UCC, Secured Transactions, applies to a "lease . . . intended as security." OCGA § 11-9-102 (2). "Unless a lease . . . is intended as security, reservation of title thereunder is not a 'security interest'. . . . Whether a lease is intended as security is to be determined by the facts of each case; however, (a) the inclusion of an option to purchase does not of itself make the lease one intended for security, and (b) an agreement that upon compliance with the terms of the lease, the lessee shall become or has the option to become the owner of the property for no additional consideration or for a nominal consideration does make the lease one intended for security." OCGA § 11-1-201 (37).

The one-page agreement contains the following provisions: "The Rollins Protective System shall remain personal property and title thereto shall continue in Rollins." We are aware that retention of title in Rollins is not dispositive in the analysis of whether the agreement is a lease or security agreement. See *Citizens & Southern Equip. Leasing v. Atlanta Fed. Savings &c. Assn.*, 144 Ga. App. 800 (3) (243 SE2d 243) (1978). However, viewing the lease as a whole, it is apparent that Rollins never intended at any time to relinquish such title. The foregoing provision goes on to state: "Customer covenants and agrees not to mortgage, sell, pledge or permit the damage or destruction of the System; to use the System in a proper manner; and upon termination of this Agreement to immediately return the System to Rollins in the same condition as when received, reasonable wear, tear and depreciation resulting from proper use thereof alone excepted." Further, the agreement at issue here includes no provision whatsoever for appellants to become owners of the equipment at any time, either by operation of the agreement for nominal or no consideration or by

option to purchase it. Under the terms of the agreement, appellants agreed "to take the [installation and service of the system] for an initial term of three years and from year to year thereafter unless either party gives written notification of cancellation to the other party thirty (30) days prior to the expiration of the original 36 month term or any renewal year thereafter."

A "lease intended as security" is an agreement in which the ultimate intent is a sale. The prime essential distinction between a lease and a conditional sale is that in a lease the lessee never owns the property. "In the absence of a right or option in the lessee to acquire ownership of the leased property, the transaction is one of lease." In re Atlanta Times, 259 FSupp. 820, 827 (N.D. Ga. 1966), affd. sub nom. Sanders v. Nat. Acceptance Co., 383 F2d 606 (5th Cir. 1967). Nowhere within the "Installation-Service Agreement" "can it be construed that the parties contemplated a sale, an option to purchase, or creation of a security interest. [Cits.] Thus, Article 9 of [the UCC, OCGA Ch. 11-9] does not apply and the parties' conduct is governed by the terms of the lease. . . ." *McGuire v. Assoc. Capital Svcs. Corp.*, 133 Ga. App. 408, 411 (210 SE2d 862) (1974). See also *Ford Motor Credit Co. v. Dowdy*, 159 Ga. App. 666 (284 SE2d 679) (1981), and cases cited therein. The trial court was correct in directing a verdict in favor of Rollins on each of appellants' claims relative to an asserted violation of the Uniform Commercial Code. We further find no error in the exclusion of appellants' testimony to explain their understanding of the agreement which contained a merger clause. See *Simmons v. Wooten*, 241 Ga. 518 (2) (246 SE2d 639) (1978).

2. The record reveals no evidence in support of appellants' allegation that Rollins violated OCGA § 10-1-372 (a) (12). The directed verdict on this issue was, therefore, proper. See OCGA § 9-11-50 (a).

3. Appellants contend that the trial court erred in declining to allow the admission of the deposition of Caldwell, the Rollins employee who repossessed the control box. The transcript shows that Caldwell testified at trial and that during cross-examination appellants' counsel used passages from the deposition testimony in an attempt to impeach his trial testimony. Counsel did not request admission of the entire deposition until the close of appellants' case. "Under these circumstances, the court's refusal to admit the deposition constituted at most harmless error." *Marathon Oil Co. v. Hollis*, 167 Ga. App. 48, 53 (305 SE2d 864) (1983).

4. Appellants enumerate as error the directed verdict in Rollins' favor on the issue of wrongful repossession based upon appellants' assertion of a "quasi-new agreement" between the parties.[1] We agree.

---

[1] Although Rollins complains that the theory of "quasi-new agreement" was not men-

OCGA § 13-4-4 provides: "Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice." The mutual departure creates a "quasi-new agreement" as to the contract term which was the subject of mutual deviation. See *Curl v. Fed. Savings &c. Assn.*, 241 Ga. 29 (244 SE2d 812) (1978); *State Mut. Ins. Co. v. Strickland*, 218 Ga. 94 (1, 2) (126 SE2d 683) (1962); *Shalom Farms v. Columbus Bank &c. Co.*, 169 Ga. App. 145 (312 SE2d 138) (1983). OCGA § 13-4-4 is applicable to lease contracts. See *Southwest Plaster &c. Co. v. R. S. Armstrong &c. Co.*, 166 Ga. App. 373 (304 SE2d 500) (1983).

Appellants' evidence at trial showed from Rollins' own records that during many of the thirty-five months of the thirty-six month lease, appellants were in default in payment under the terms of the lease. Also, on at least two occasions, appellants' checks to Rollins were returned for insufficient funds. Evidence was in dispute as to Rollins' notice to appellants that Rollins intended to adhere to the strict terms of the lease regarding default and repossession.

"Evidence of repeated, late, irregular payments, which are accepted by the creditor, creates a factual dispute as to whether a quasi new agreement is created under [OCGA § 13-4-4]." *Vaughan v. Wrenn Bros.*, 163 Ga. App. 383, 384 (294 SE2d 609) (1982). "Whether the conduct of the parties constitutes a mutual departure from a waiver of a contract provision ordinarily is a question of fact for the jury." *Southwest Plaster &c. Co. v. R. S. Armstrong &c. Co.*, supra at 374. A jury question as to the sufficiency of notice was also raised. See *Curl v. Fed. Savings &c. Assn.*, supra. Under the facts of this case, the jury would have been authorized to find that Rollins wrongfully repossessed the control box to which the terms of the lease gave appellants the right of possession and use. See *Smith v. Gen. Fin. Corp.*, 243 Ga. 500 (255 SE2d 14) (1979); *Hayes v. Fidelity Acceptance Corp.*, 147 Ga. App. 144 (1) (248 SE2d 209) (1978). See generally *Teston v. Teston*, 135 Ga. App. 321 (2) (217 SE2d 498) (1975). The trial court, therefore, erred in removing from the jury appellants' claim for damages for wrongful repossession and the case must be remanded

---

tioned in the complaint or raised in the pre-trial conference, the record contains no pre-trial order. We agree that had an order been entered, the issues would have been so restricted unless modified at trial. See OCGA § 9-11-16 (b); *Georgia Power Co. v. O'Bryant*, 169 Ga. App. 491 (313 SE2d 709) (1983). However, Rollins offered no objection to the presentation of evidence at trial to show a "quasi-new agreement"; therefore, the pleadings are deemed amended to conform to that evidence. See OCGA § 9-11-15 (b); *Carreras v. Austell Box Board Corp.*, 154 Ga. App. 135 (2) (267 SE2d 792) (1980).

for such consideration of this issue.

5. Appellants' sole basis for challenging the directed verdict on Rollins' counterclaim is grounded in their claim that Rollins failed to comply with the UCC by disposing of the system in a commercially reasonable manner. As explained in Division 1, Rollins was under no duty to do so because the UCC is inapplicable to the lease agreement at issue here. Appellants' counsel stipulated to the amounts due under the agreement, reserving the right to appeal the trial court's ruling on the inapplicability of the UCC. Our holding in Division 4 does not change the fact that this undisputed amount is still due and owing Rollins under the agreement. "A mutual departure from one contract term . . . does not affect the enforceability of the other contractual provisions." *Southwest Plaster &c. Co. v. R. S. Armstrong &c. Co.*, supra at 374. The trial court properly granted Rollins' motion for directed verdict on its counterclaim.

*Judgment affirmed in part; reversed in part. Banke, P. J., and Benham, J., concur.*

DECIDED JULY 12, 1984 —
REHEARINGS DENIED JULY 27 AND JULY 31, 1984 —

*Ralph S. Goldberg*, for appellants.
*Robert A. Moss, Richard P. Decker*, for appellee.