## A95A0693. LABAT v. BANK OF COWETA.
### (460 SE2d 831)

RUFFIN, Judge.

Edwina Labat appeals from the trial court's grant of summary judgment to the Bank of Coweta ("the bank").

On April 19, 1993, Labat went to the bank to purchase a cashier's check which she intended to send to Superior Pants Company to satisfy an outstanding debt. Labat first deposited a $300 third-party check, payable to her husband, into a joint account she maintained with her minor daughter. The bank credited $300 to the account. Labat then gave the bank $1,084.16 in cash, which included a $6 cashier's check fee, to purchase a cashier's check for $1,078.16. Rather than issuing Labat a cashier's check, the bank issued a bank draft on its account with Firstar Bank of Bloomington, Minnesota, made payable to the Superior Pants Company. Labat's name was referenced under the bank's name on that check which was issued for $1,078.16. Labat then mailed the check to Superior Pants.

On April 23, 1993, the third-party check was returned to the bank stamped, "ACCOUNT CLOSED." On the same day, the bank stopped payment on the bank draft, notified Labat, and further advised Labat to come to the bank to get money the bank owed her. When she went to the bank the following day, Labat was given two checks. One check was issued for $369.48, representing the balance from the bank draft less $300 for the returned third-party check; $375.56, the balance due on a personal loan previously made by the bank to Labat; and other expenses chargeable to the account. The bank closed the joint account and issued Labat a second check for the amount remaining in the account.

On April 28, 1993, without knowledge of the stop payment order, Superior Pants presented the bank draft to the bank for payment. The bank dishonored the check, stamped the draft "ITEM RETURNED REFER TO DRAWER," and returned the check to Superior Pants. Labat later advised the bank that the personal loan was being paid through her bankruptcy plan and that the deduction from the bank draft for the loan violated bankruptcy automatic stay provisions.

Labat then commenced the instant action alleging that the bank tortiously interfered with her business relationship with Superior Pants, wrongfully closed the joint account, and wrongfully set off the balance due on her personal loan in violation of the automatic stay in her bankruptcy case. The bank moved for summary judgment on the grounds that it was authorized to stop payment on its own bank draft because of a partial failure of consideration; the trial court had no jurisdiction over Labat's bankruptcy claims; Labat's account was lawfully closed; and Labat's claim for tortious interference had no basis

in fact. Labat then amended her complaint to allege, in addition, that the bank interfered with her legal and professional contractual relations; committed fraud; wrongfully levied and converted her child's funds; intentionally inflicted emotional distress on her and her family; breached its account agreement; trespassed upon her chattel; solicited false testimony; conspired to force her attorneys to withdraw (their) representation; conspired to conceal wrongful conversion and other offenses; breached a third-party beneficiary contract and the express warranty for the issued check; breached its fiduciary duty; fraudulently induced her to purchase a bank draft; and violated the RICO Act. In its order granting the bank's motion for summary judgment, the trial court struck Labat's untimely response to the motion and dismissed her amended complaint. This appeal followed.

" 'In order to prevail on a motion for summary judgment (pursuant to OCGA § 9-11-56), a defendant-movant is required to pierce the allegations of the complaint and to establish as a matter of law that the plaintiff could not recover under any theory fairly drawn from the pleadings and the evidence. . . .' [Cit.] Furthermore, 'the evidence is viewed in a light most favorable to the respondent, and the respondent is given the benefit of every doubt. The movant has the burden to prove the non-existence of any genuine issue of material fact, and in so determining, the court will treat the respondent's paper with considerable indulgence.' [Cit.]" *Centennial Life Ins. Co. v. Smith*, 210 Ga. App. 194, 195 (435 SE2d 498) (1993).

1. We first consider Labat's contention that the trial court abused its discretion in denying her motion for an extension of time to file a response to the bank's motion for summary judgment. Although the record contains no order denying an extension of time, we will consider this issue as it is implicit in the court's striking of Labat's response to the motion because the response was untimely.

The bank served its motion for summary judgment by registered mail on July 20, 1994. Therefore, a response to the motion was due on Monday, August 22, 1994, because the thirtieth day fell on a Sunday. Since Labat did not file her response until August 24, 1994, and she was not entitled to the three-day extension provided in OCGA § 9-11-6 (e) because the motion was served by registered mail, the response was untimely filed. See Uniform Superior Court Rule 6.2; *Favors v. Travelers Ins. Co.*, 150 Ga. App. 741, 747 (2) (258 SE2d 554) (1979).

Labat explained that her response was not filed on time because she forgot that her attorney instructed her to stay in town until he filed her response. She stated she went to Kentucky on a previously scheduled business trip, for a "few days out of Georgia to be with [her] family, to conduct some very important business, and to for a short time, forget [her] pain and ease [her] mental anguish." We have held that the "press of business" does not constitute excusable neg-

lect which would justify the untimely filing of defensive pleadings. See *Snow v. Conley*, 113 Ga. App. 486, 489 (148 SE2d 484) (1966). Hence, under the circumstances of this case, we find no abuse of discretion in the striking of Labat's response because it was untimely filed. See *Wimberly v. Karp*, 185 Ga. App. 571 (1) (365 SE2d 131) (1988).

2. Labat also argues the trial court erred in finding there was no genuine issue of material fact as to whether the bank was authorized to stop payment on her cashier's check because of an alleged partial failure of consideration. Labat alleged that the bank's wrongful dishonor of the bank draft without legal excuse damaged her business relationship with Superior Pants. Pretermitting a determination as to whether the bank was justified in stopping payment on the bank draft, we find that Labat's claim for tortious interference with business relations must fail because there is no evidence in the record which demonstrates that Labat suffered any financial injury as a result of the bank's action, one of the elements of proof in establishing a claim for tortious interference.

In order to recover on a claim " 'for tortious interference with business relations the evidence must show the defendant (1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury.' [Cit.] Subjective good faith, standing alone, is not an absolute defense to a claim of tortious interference with business relations, just as 'malice' within the meaning of such a claim need not be prompted by bad faith or personal dislike. ' "The term 'malicious' or 'maliciously' means any unauthorized interference, or any interference without legal justification or excuse. Personal ill will or animosity is not essential." [Cit.]' [Cits.]" *Valdez v. Power Indus. Consultants*, 215 Ga. App. 444, 447 (2) (451 SE2d 87) (1994). Because there was no evidence of financial injury, the trial court did not err in granting summary judgment on this claim.

The foregoing renders it unnecessary to consider Labat's second enumeration of error in which she contends the trial court erred in finding as a matter of law that the bank draft was not purchased with cash.

3. Labat contends the trial court erroneously concluded that as a matter of law it had no jurisdiction over the bank's violation of the automatic stay in bankruptcy. "Under 28 USC § 1334 (d), the federal district court [acting through the bankruptcy court] has exclusive jurisdiction over all the debtor's property as of the date of filing in bankruptcy [court] and over all property of the estate." *Carver v. Carver*, 954 F2d 1573, 1577 (1) (11th Cir. 1992). Inasmuch as Labat

contends the personal loan was property of the bankruptcy estate, we find no error.

4. Labat contends the trial court erred in granting summary judgment on her amended verified complaint. Since the trial court did not set forth in its order the specific basis for the grant of summary judgment to the bank and its dismissal of Labat's amended complaint, we must look to the grounds set forth in the bank's motion to determine which allegations in the complaint were pierced as a matter of law.

In its motion for summary judgment, the bank contended it was justified in stopping payment on the bank draft because of a partial failure of consideration; the trial court had no jurisdiction over Labat's bankruptcy claims; Labat's claim for tortious interference had no basis in fact; and Labat's joint account was lawfully closed. Since we have already addressed the first three grounds, we need only consider the remaining ground.

(a) As to whether the bank lawfully closed the joint account, the account agreement provided as follows: "The account may be closed by the financial institution at any time by mailing a notice to the depositor with a check for the balance, and the financial institution shall not be liable for refusing to pay any check presented after said account is so closed." The evidence shows that the bank failed to provide notice by mail, as required in the agreement. The bank telephoned Labat on the day the account was closed and advised her to come to the bank to get money the bank owed her. The following day at the bank, she was informed in person that the account had been closed, and she was given a check for the balance in the account. The bank concedes that it did not provide notice by mail but argues that by notifying her in person and giving her a check for the entire balance remaining in the account, it substantially complied with the agreement. We agree.

"Our general rule with respect to compliance with contract terms is not strict compliance, but substantial compliance. At common law a strict and literal performance of the terms of the contract was required; but by rules of equity, either adopted by statute or recognized by the courts, a substantial compliance with the terms of the contract is sufficient. . . ." (Citations and punctuation omitted.) *Bldg. Materials Wholesale v. Reeves*, 209 Ga. App. 361, 363 (433 SE2d 346) (1993). See also OCGA § 13-4-20. The bank telephoned Labat on the day the account was closed. Although the bank failed to reach her that day, she was notified the following day in person and given a check for the balance in the account. This notice, in fact, exceeded the notice required in the agreement. Therefore, the trial court did not err in granting summary judgment on this ground.

(b) The bank did not amend its motion for summary judgment to address the additional claims asserted against the bank in Labat's

amended complaint. Therefore, the trial court was not authorized to consider and grant summary judgment as to those claims that did not relate to the four grounds set forth in the bank's motion for summary judgment. Accordingly, summary judgment granted on those additional claims must be reversed.

5. We need not further consider Labat's remaining enumerations of error since we have already addressed them in connection with other enumerations.

*Judgment affirmed in part and reversed in part. Beasley, C. J., and Pope, P. J., concur.*

DECIDED JULY 13, 1995 —
RECONSIDERATIONS DISMISSED JULY 27, 1995 —

*Ralph J. Villani*, for appellant.
*Rosenzweig, Kam, Jones & MacNabb, Joseph P. MacNabb*, for appellee.