A97A2433. HEMMERICH v. SOUTHEAST PROPERTIES GROUP, L.P.

(498 SE2d 87)

JOHNSON, Judge.

Marsha Hemmerich appeals the trial court's grant of summary judgment to Southeast Properties Group, L.P. ("Southeast"). Southeast filed a dispossessory action on the bases that the tenant had not paid rent and was holding over beyond the term. The trial court found that Southeast was entitled to immediate possession of the premises.

Hemmerich, who does business as The Commerce Cafe, became a tenant under a commercial lease with Southeast by virtue of a second assignment and assumption of a lease. The original lease was executed on June 15, 1989, by Commerce Center Partners, Ltd., as landlord, and John Chris Adams and Maurene S. Adams, d/b/a The Commerce Cafe, as tenant. Paragraph 4 of the lease provides, "Tenant agrees to pay Landlord throughout the Term of this Lease as rent for the Premises and utilities the sum specified [in Special Stipulation No. 1] payable in advance without notice on or before the first day of each successive calendar month during the Term hereof."

In December 1992, COM Realty, Inc., the successor-in-interest to Commerce Center Partners, Ltd., as landlord, and John and Maurene Adams, d/b/a The Commerce Cafe, as tenant, amended the lease. The amendment modified the expiration of the lease term to March 31, 1997, and changed the amount of the monthly rent and the date the monthly rent was due. Specifically, the rent was changed to eight percent of the tenant's gross sales per month, but no less than $1,000 per month. In addition, the tenant was required to supply a copy of its Georgia Sales & Use Tax Report with the rent check for the prior month no later than the fifteenth of the month. On June 30, 1994, Hemmerich became lessee of the premises pursuant

to a lease assignment by John and Maurene Adams. Hemmerich admits she understood the amendments required that the rent be received by the landlord on or before the fifteenth of each month.

On October 18, 1996, Hemmerich was advised that she was in default of the lease for failure to pay October rent and miscellaneous charges. As with at least one previous letter, she was advised that Southeast expected strict compliance with the lease terms, including the obligation to pay rent. She was also advised that she was in default for non-monetary obligations under the lease, such as failure to provide her Georgia Sales & Use Tax Reports. Hemmerich paid the October rent by hand-delivering a check to Southeast's property manager on October 22, 1996. The November rent was paid on November 15, 1996.

Hemmerich made no objection to the October 18 default letter until December 13, 1996, when her attorney wrote a letter denying Hemmerich was in default. While Hemmerich's attorney acknowledged in this letter that rent was due on the fifteenth of each month, Hemmerich failed to pay the December rent and past due charges on or before December 15, 1996.

On December 17, 1996, Southeast notified Hemmerich that the lease was terminated based on her failure to pay rent and other related charges when due. Southeast also demanded immediate possession of the premises. On December 18, 1996, Southeast filed its dispossessory action.

1. The trial court correctly found that no issue of material facts existed regarding Hemmerich's failure to timely pay rent and her default under the lease. The lease clearly provides that an event of default is Hemmerich's failure to pay any installment of rent when it is due. Upon the occurrence of such a default, Southeast has the option to terminate the lease pursuant to its provisions. When Hemmerich failed to pay the December rent and other charges on or before December 15, 1996, Southeast elected to terminate the lease. Hemmerich has no defense to Southeast's claim that it is entitled to possession of the premises. See *Dublin Pub v. Mut. Life Ins. Co. of New York*, 191 Ga. App. 677, 678 (2) (382 SE2d 654) (1989); *Eason Publications v. Monson*, 163 Ga. App. 370, 371 (2) (294 SE2d 585) (1982).

According to Hemmerich, she was not in default because she placed the December rent check in the mail on December 13, 1996. Despite her argument, however, Hemmerich did not provide any evidence that Southeast received the December rent payment by December 15, and Southeast provided evidence that it did not receive the December rent payment until after December 15. While Hemmerich testified that Southeast had always accepted late payments after the fifteenth of each month without objection, she acknowl-

edged that Southeast began sending her delinquency notices for late payments after April or May 1996. Even if it could be said that Southeast and Hemmerich had mutually departed from the terms of the lease, delinquency notices as early as April or May 1996 and Southeast's September and October letters reasonably put Hemmerich on notice that Southeast intended to rely on the exact terms in the lease. See *Father & Son Moving & Storage Co. v. Peachtree Airport &c.*, 229 Ga. App. 860 (495 SE2d 87) (1997); OCGA § 13-4-4. In addition, while Hemmerich contends the lease provision regarding "supplying" rent payments by the fifteenth day of each month was ambiguous, she admits that, according to the lease, rent payments were to be paid on or before the fifteenth of each month.

Contrary to Hemmerich's contentions, any bad faith conduct on the part of Southeast does not change the fact that Hemmerich was in default of the lease. Whether Southeast sent false letters to Hemmerich regarding the quality of her food or whether Southeast discouraged other tenants from patronizing the cafe does not impact Hemmerich's obligation to pay rent according to the lease. A party does not breach its obligation of good faith where it exercises a right which it has under a contract. *Automatic Sprinkler Corp. v. Anderson*, 243 Ga. 867, 868-869 (257 SE2d 283) (1979); *Southern Business Machines v. Norwest Financial Leasing*, 194 Ga. App. 253, 256 (2) (390 SE2d 402) (1990). Furthermore, there is no claim or evidence that any allegations of bad faith on the part of Southeast prevented Hemmerich from timely paying her rent. The trial court correctly determined that no material issues of fact existed regarding Hemmerich's default under the lease.

2. Hemmerich further contends she exercised her lease extension option because she substantially complied with the terms of the lease. We disagree.

A second amendment to the lease granted Hemmerich the option to extend the initial lease term for an additional five years. Specifically, the second amendment provided, "So long as Tenant is not in default hereunder and the quality of the food is acceptable to Landlord, Tenant shall have the right and option to extend the initial Lease Term for one (1) additional period of five (5) years beyond the initial Lease Term at the then current market rate and upon delivery of written notice of the exercise of such option not later than one hundred eighty (180) days prior to the Termination Date." According to Southeast, 180 days prior to the termination date of the lease, Hemmerich was in default for failure to pay August and September rent and other charges and neither Southeast nor its representatives received any written notice that Hemmerich desired to exercise her lease extension option.

Paragraph 27 of the lease provides that all notices should be

mailed by U. S. mail, postage prepaid, certified/return receipt mail, or personally delivered by a commercial carrier service. Hemmerich admits that prior to October 24, 1996, when her husband sent a copy of the handwritten letter dated July 1, 1996, to Southeast by facsimile, the only method she used to deliver the alleged written notice of the exercise of the option was by laying it on the desk in the property manager's office. She further admits that no one was in the office when she delivered the notice. Hemmerich and her husband were both informed that Hemmerich had failed to properly exercise the option.

Contrary to Hemmerich's assertion, this case is not "on all fours" with *Labat v. Bank of Coweta*, 218 Ga. App. 187, 190 (4) (a) (460 SE2d 831) (1995). In *Labat*, the agreement at issue allowed the bank to close an account by mailing a notice with a check for the balance. Instead, the bank notified Labat in person and hand-delivered her a check for the balance in the account. The parties agreed that notice was received. We held that personally notifying the individual and hand-delivering the check were substantial compliance with the agreement. Id.

In the present case, however, although Hemmerich claims she left her notice on the desk of Southeast's property manager, Southeast claims it never received the notice. Hemmerich did not have the notice personally delivered by a common carrier service or otherwise follow the lease terms regarding the extension option. Based on these facts, we do not find that Hemmerich substantially complied with the terms of the lease. As in *Turman v. MacLachlan*, 257 Ga. 69 (1) (354 SE2d 825) (1987), the lease was not renewed as a matter of law and, therefore, expired on March 31, 1997. The trial court properly granted summary judgment to Southeast and entered a writ of possession in favor of Southeast.

*Judgment affirmed. Pope, P. J., and Blackburn, J., concur.*

DECIDED FEBRUARY 20, 1998.

*Evan M. Altman, David J. Salome*, for appellant.
*Harman, Owen, Saunders & Sweeney, Perry A. Phillips, Hicks, Casey & Barber, Mark A. Barber*, for appellee.