A05A1441. JACKSON v. NEESE et al.

(624 SE2d 139)

BARNES, Judge.

On August 25, 2004, Horace Jackson filed a complaint for injunctive relief requesting that the trial court issue a temporary restraining order enjoining Brenda Gunter Neese and other family members from interfering with his possession of certain real property. Jackson claimed that in 1994 and 2001, his former father-in-law orally promised to convey certain properties to him and his ex-wife upon his death. Jackson asserted that although he and his wife had divorced in 2004, before his wife's death on August 14, 2004, she devised her entire estate to him, thus sole ownership was conveyed to him at that time. He maintained in his complaint that Neese and other family members had wrongly interfered with his possession of his property by having him removed from the house and changing the locks. Following a pre-hearing conference, on September 24 the trial court issued an order restraining both parties from entering the subject property, but expediting the case and requiring both parties to appear before the court in October for jury selection, and on November 8 for trial.

Following trial, the jury entered a judgment in Neese's favor finding that as to Jackson's claims regarding the real property at issue, "[n]o oral contract existed and no gift was made." Final judgment was entered against Jackson on February 24, 2005, and Jackson appealed to the Supreme Court from the entry of the final judgment. The Supreme Court transferred the appeal to this Court, finding it raised only a legal issue and so fell within the jurisdiction of the Court of Appeals. Upon review, we find no merit to Jackson's asserted errors and affirm.

1. Jackson first argues that the trial court abused its discretion in the denial of his motion for an interlocutory injunction. This argument is meritless.

The evidence establishes that on September 24, 2004, the trial court entered an order in which it noted that after a pre-hearing conference at which both parties were represented by counsel,

> [t]he parties through counsel agree to an Order being entered as follows: Both parties are hereby restrained and enjoined from occupying, possessing or using the real property herein. . . . Both parties are to equally share in the cost of maintaining said property in its present condition.

The order also reflected that the parties had agreed to the dates for jury selection and trial. A consent order filed two weeks later likewise revealed the parties' agreement.

Jackson cannot now be heard to complain on appeal about the resulting order that his own actions assisted in creating.

> An order entered with the consent of counsel is binding on the client in the absence of fraud, accident, mistake or collusion of counsel. In the absence of fraud or mistake, a party cannot complain of a judgment, order, or ruling that his own conduct produced or aided in causing. No fraud or mistake being shown, [Jackson] cannot complain of the judgment entered by consent.

(Citations and punctuation omitted.) *Attwell v. Lane Co.*, 182 Ga. App. 813, 814 (2) (357 SE2d 142) (1987).

2. In two enumerations of error Jackson complains that the trial court erred in allowing argument to the jury that OCGA § 53-4-30 requires that after January 1, 1998, a testamentary promise to convey land must be in writing, and also in so instructing the jury. He argues that, as his claim involved a parol gift of land, it is controlled by the equitable exception to the Statute of Frauds, OCGA § 13-5-30 (4), contained in OCGA §§ 23-2-131 and 23-2-132. He maintains that OCGA § 53-4-30 does not apply in this circumstance.

At trial, Jackson maintained that in 1994 his former father-in-law promised that upon his death he would convey twenty-two acres of land to Jackson and his then wife, and that in 2001, his father-in-law promised the couple that they would also receive the house with six acres that he presently occupied. Jackson testified that after his father-in-law made the promise to convey the 22 acres in 1994, although they did not live on the property, the couple put a trailer on the land and maintained the upkeep of the property, including paying the taxes. He also testified that after his father-in-law made the 2001 promise of the house with six acres, he and his wife moved into the home and lived there until he moved out after their divorce in 2004.

Jackson said that he moved back into the home when his ex-wife became ill, and that the couple had planned to remarry before she died. Shortly before she died, Jackson's ex-wife executed a will leaving everything to Jackson. His father-in-law died one week before Jackson's ex-wife.

Neese, Jackson's ex-sister-in-law, argued that if any promise to convey was made, it was made in 2001 at the time the couple moved into the residence. She testified that her father had originally planned to devise the home to Jackson's wife, but that he had changed his will after the two had an argument.

Under OCGA § 23-2-131 (a), "[t]he specific performance of a parol contract as to land shall be decreed . . . if the contract has been so far executed by the party seeking relief and at the instance or by the inducements of the other party that if the contract were abandoned he could not be restored to his former position." OCGA § 23-2-132 provides that equity will decree the specific performance of a parol agreement for land if "possession of lands has been given under such an agreement, upon a meritorious consideration, and valuable improvements have been made" based on the promise to convey. *Coleman v. Coleman*, 265 Ga. 568, 569 (1) (459 SE2d 166) (1995). However, pursuant to the 1998 revised Probate Code,

> [a] contract made on or after January 1, 1998, that obligates an individual to make a will or a testamentary disposition, not to revoke a will or a testamentary disposition, or to die intestate shall be express and shall be in a writing that is signed by the obligor.

OCGA § 53-4-30.

Although there was conflicting testimony about what land was promised to Jackson and when the promise was made, the parties do not dispute that the father-in-law at some point in time promised Jackson and his wife that he would leave them certain property in his will. Accordingly, as the applicability of OCGA § 53-4-30 was authorized by the evidence, there was no error in allowing Neese to argue it. While Jackson argues that his ex-father-in-law's statements created a contract pursuant to OCGA §§ 23-2-131 (a) and 23-2-132, in these circumstances, the jury was authorized to resolve any conflicting theories regarding the ownership of the land and the applicability of such theories.

Moreover, although he now complains that the trial court erred in charging the jury on OCGA § 53-4-30, Jackson did not object to the charge when it was given. OCGA § 5-5-24 (a) provides that "in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury

returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." The sole exception to this rule, which is stated in OCGA § 5-5-24 (c), applies only "where there has been a substantial error in the charge which was harmful as a matter of law, regardless of whether objection was made hereunder or not." *Setliff v. Littleton*, 264 Ga. App. 711, 714 (2) (592 SE2d 180) (2003). We construe no such error in this case.

3. Jackson next complains that the trial court erred in approving the jury verdict and in making the verdict the order and judgment of the court.

> The verdict of the jury, although not demanded, was supported by some evidence. This court does not pass upon the credibility of witnesses, nor the weight to be given evidence on disputed facts. These are questions for the jury. Whether their verdict is contrary to the evidence, or contrary to its weight, or decidedly and strongly against its weight, is a question the law vests in the trial judge's discretion. He may grant a new trial on these grounds, but this court has no such power. Where the trial judge approved the verdict, the sole question for determination by this court is whether there is any evidence sufficient to authorize it.

(Citation and punctuation omitted.) *Ryals v. McVey*, 98 Ga. App. 123, 124 (1) (105 SE2d 240) (1958).

4. Jackson argues that the estate of Jean Gunter Jackson, Jackson's ex-wife, was not a proper party to the action, and thus the form of the verdict was improper because it required the jury to determine what interest Jean Jackson's estate had in the property.

Pretermitting any error, Jackson did not object to the form of the verdict at trial. "If the form of the verdict was improper, irregular, or incomplete, it was incumbent on [Jackson] to object to it in a timely manner. In light of [his] failure to do so, any alleged deficiency has been waived." (Footnotes omitted.) *Hadlock v. Anderson*, 246 Ga. App. 291, 295 (3) (540 SE2d 282) (2000).

*Judgment affirmed. Ruffin, C. J., and Johnson, P. J., concur.*

DECIDED OCTOBER 6, 2005 —
RECONSIDERATION DENIED DECEMBER 7, 2005 —

*Ted D. Spears*, for appellant.
*Smith, Welch & Brittain, Thomas B. McFarland*, for appellees.