A06A1245. VAKILZADEH ENTERPRISES, INC. v. THE HOUSING AUTHORITY OF THE COUNTY OF DeKALB.
(635 SE2d 825)

PHIPPS, Judge.

Affordable Housing Development Corporation of DeKalb (Affordable) entered into an agreement with Vakilzadeh Enterprises, Inc. d/b/a Allstates Construction Company (Allstates), under which Allstates became Affordable's general contractor for the construction of a

subdivision. The Housing Authority of the County of DeKalb (De-Kalb), as Affordable's assignee, later terminated the agreement on grounds that Allstates had breached it in several ways. Allstates then brought this suit against DeKalb for wrongful termination.

DeKalb answered the complaint, filed a counterclaim, and then moved for summary judgment on Allstates' complaint. The trial court granted DeKalb's motion for summary judgment. The court found that although material issues of fact may exist as to other breaches of contract claimed by DeKalb, DeKalb was authorized to terminate the agreement because of Allstates' undisputed failure to comply with a provision in the agreement requiring it to maintain liability insurance without interruption throughout the project. Allstates appeals. Finding material issues of fact on the question of whether Affordable was authorized to terminate the parties' agreement based on Allstates' noncompliance with the liability insurance provision, we reverse.

On March 7, 2002, Affordable and Allstates entered into the agreement requiring Allstates to furnish all labor, materials, equipment, and services required to complete construction of the Sugar Mill Creek Subdivision for a total adjustable contract price of $1,898,945 (payable in periodic increments as construction progressed). The agreement provided for construction of the subdivision in three phases. The evidence, construed most favorably to Allstates as the party opposing the motion for summary judgment,[1] shows that Allstates had to complete construction of Phase I of the subdivision in a manner satisfactory to Affordable before it would be authorized to proceed with construction of Phases II and III.

The agreement required Allstates to maintain various types of liability insurance covering itself and its subcontractors, and to file certificates of insurance with Affordable prior to beginning work showing that coverage could not be cancelled or allowed to expire until at least 30 days after prior written notice to Affordable. The required insurance was to be maintained without interruption from commencement of the work until completion of the project. Allstates was required to appear at a pre-construction meeting held at or about the time the agreement was executed and bring copies of its insurance policies. Allstates did so by providing, among other things, a certificate of general liability insurance effective from November 15, 2001, until November 15, 2002.

The agreement authorized termination by Affordable if Allstates: (1) persistently or repeatedly refused to supply enough properly skilled workers or proper material; (2) failed to make payments

---

[1] *Latson v. Boaz*, 278 Ga. 113 (598 SE2d 485) (2004).

to subcontractors for materials or labor in accordance with the agreements between it and the subcontractors; (3) persistently disregarded any applicable laws, ordinance, rules, or regulations; or (4) otherwise was guilty of a substantial breach of contract.

After construction of Phase I had been completed, DeKalb notified Allstates in April 2003 that it should schedule another pre-construction meeting for Phases II and III. Unlike before, Allstates was not asked to provide verification of insurance coverage at the meeting and did not do so. Nonetheless, it was allowed to proceed with Phase II construction.

In September 2003, a water line in the subdivision was broken during construction activities. By letter dated November 14, 2003, DeKalb notified Allstates that it had determined through investigation that the water leakage resulted from improper installation of the water line and that Allstates as general contractor was responsible for damages. In addition, the letter apprised Allstates that DeKalb had also been informed that Allstates had allowed its liability insurance coverage for the project to lapse. DeKalb instructed Allstates to provide a certificate of current liability insurance no later than November 21. In response, Allstates provided a certificate of insurance showing coverage from December 1, 2003, until December 1, 2004 (thereby showing that from November 15, 2002, until December 1, 2003, Allstates had worked on the project without insurance).

By letter dated January 9, 2004, DeKalb notified Allstates that it was terminating its contract with Allstates effective ten days from the date of the letter based on several factors, including but not limited to, Allstates' failure to prosecute work with such diligence as to ensure its timely completion, consistent disregard for regulations and requirements of DeKalb County, and failure to maintain liability insurance. Two weeks later, Allstates brought this suit.

Allstates argues that it and DeKalb mutually departed from the requirement that it maintain uninterrupted insurance coverage and that DeKalb thereby waived its right to terminate the parties' agreement for noncompliance with this requirement without first giving Allstates reasonable notice of its intent to rely on the exact terms of the agreement.

DeKalb claims that there is no evidence that it waived the insurance provision of the parties' agreement and that, in any event, no waiver could have been effected under the facts present here due to a clause in the agreement providing that, "[n]o action or failure to act by [either party] shall constitute a waiver of a right or duty afforded them under the contract, nor shall such action or failure to act constitute approval of or acquiescence in a breach hereunder, except as may be specifically agreed in writing."

OCGA § 13-4-4 provides:

> Where parties, in the course of the execution of a contract, depart from its terms and pay or receive money under such departure, before either can recover for failure to pursue the letter of the agreement, reasonable notice must be given to the other of intention to rely on the exact terms of the agreement. The contract will be suspended by the departure until such notice.[2]

Under OCGA § 13-4-4, a mutual departure from the terms of an agreement results in a quasi-new agreement suspending the original terms of the agreement until one party has given the other reasonable notice of its intent to rely on the original terms.[3] "The question whether the parties' mutual conduct caused a waiver and effected a quasi-new agreement ordinarily is a question for the jury."[4] Moreover, "a provision in a contract against waiver of contractual rights may itself be found by the jury to have been waived."[5] And "[w]hether the conduct of the parties constitutes a mutual departure from a waiver of a contract provision ordinarily is a question of fact for the jury."[6]

There is evidence that DeKalb required Allstates to provide verification of liability insurance coverage before proceeding with construction of Phase I but, with knowledge that the liability insurance that Allstates had previously had expired in November 2002, acquiesced in Allstates' proceeding with construction of Phases II and III in April 2003 without filing certificates of insurance.[7] Whether DeKalb thereby waived its right to terminate the parties' agreement based on Allstates' noncompliance with the insurance provision without first giving Allstates notice of its intent to rely on that provision is a question for the jury.[8]

---

[2] See *Hughes v. Great Southern Midway*, 265 Ga. 94, 95 (1) (454 SE2d 130) (1995); compare *Rabun & Assoc. Constr. v. Berry*, 276 Ga. App. 485, 486-487 (1) (623 SE2d 691) (2005) (involving claimed waiver of a right to sue by reason of an insurance provision in a contract; no claim that insurance provision was waived); *MNM 5, Inc. v. Anderson/6438 Northeast Partners, Ltd.*, 215 Ga. App. 407, 410 (2) (451 SE2d 788) (1994) (distinguishing knowing, voluntary, and permanent waiver of a right from temporary suspension of a right under OCGA § 13-4-4).

[3] See *Parkside Center v. Chicagoland Vending*, 250 Ga. App. 607, 612 (3) (552 SE2d 557) (2001).

[4] *Kusuma v. Metametrix, Inc.*, 191 Ga. App. 255, 257 (3) (381 SE2d 322) (1989) (citations omitted).

[5] *Smith v. Gen. Finance Corp. &c.*, 243 Ga. 500, 501 (255 SE2d 14) (1979).

[6] *Ford v. Rollins Protective Svcs. Co.*, 171 Ga. App. 882, 885 (4) (322 SE2d 62) (1984) (citation and punctuation omitted).

[7] See *Parkside Center*, supra; *Kusuma*, supra; compare *Abrahamsen v. McDonald's Corp.*, 193 Ga. App. 868, 870 (2) (389 SE2d 386) (1989) (no competent evidence to support assertion that one party acquiesced in other party's breach of contract).

[8] See *Parkside Center*, supra; *Kusuma*, supra; compare *Hemmerich v. Southeast Properties Group*, 230 Ga. App. 697, 699 (1) (498 SE2d 87) (1998) (even if landlord and tenant mutually departed from terms of lease, landlord unquestionably gave tenant subsequent notice it

Moreover, the evidence additionally shows that when DeKalb asked Allstates to provide verification of current insurance coverage after the water line break, Allstates did so. And it does not appear that the water line break left DeKalb in an uninsured position vis-a-vis the water line break, as the subcontractor who had installed the water line had liability insurance coverage. Nor does it appear that the gap in Allstates' insurance left DeKalb in an uninsured position with regard to any other claim or loss. Under the circumstances, whether Allstates' breach of the contract provision requiring that it maintain uninterrupted insurance coverage constituted a "substantial breach of contract" authorizing termination of the contract after the breach had been remedied is also a question for the jury.

*Judgment reversed. Ruffin, C. J., and Smith, P. J., concur.*

DECIDED AUGUST 18, 2006.

*Miller & Martin, Jennifer B. Grippa, Bryan M. Cavan,* for appellant.

*Powell & Goldstein, Diane F. LaRoss, Mark B. Carter, Christopher E. Reeves, Christopher P. Galanek,* for appellee.