A09A0533. CHRISTIE et al. v. RAINMASTER IRRIGATION, INC.
(682 SE2d 687)

ADAMS, Judge.
Rainmaster Irrigation, Inc. filed suit against Caroline Christie d/b/a Peach Brandy Cottage (hereinafter "Christie") on June 28, 2006, seeking $11,500 in damages for breach of a December 2005 contract between the parties for installation of a commercial irrigation system. Alternatively, Rainmaster asserted a claim for quantum meruit if the court found that no valid contract existed. The company also asserted a claim for attorney fees. Christie answered and counterclaimed that Rainmaster breached the December 2005 con-

tract, entitling her to the return of $15,000 she paid for the system, as well as $250,000 in general damages to her property and business and $250,000 in punitive damages. Rainmaster subsequently filed an amended complaint, which altered the breach of contract claim. Instead of alleging a breach of the December 2005 contract, Rainmaster alleged a breach of the parties' agreement as amended by a mutual decision to depart from the original December 2005 proposal.[1] Following a four-day trial, a jury awarded Rainmaster $11,500 in compensatory damages against Christie, plus $19,000 in attorney fees for "having caused Plaintiff unnecessary trouble and expense." The jury also awarded Christie $3,774.95 on her counterclaim. Christie appeals.

At trial, Michael Betts, Rainmaster's vice president, testified that Christie hired the company in 2005 to install a commercial irrigation system at her business, known as the "Peach Brandy Cottage." Christie told Betts that she wanted an irrigation system to accommodate the landscape scheme she was installing on the property, and she provided Betts with a copy of her planned design. Rainmaster prepared a written, typed proposal on December 23, 2005 based upon Christie's landscape design. Christie signed to indicate her acceptance of the proposal, including the estimated installation price of $33,050. Betts testified that he considered this proposal to be a valid contract at the time and Rainmaster intended to install an irrigation system exactly as shown on the proposal, but the irrigation plan had to be changed when Christie later decided to alter the landscape design. Christie decided to make some of these changes, at least temporarily, in order to obtain a certificate of occupancy so she could open her business in a timely fashion.

The parties first discussed removing the installation of a water feature from the irrigation plan, and Rainmaster prepared a new proposal showing a reduced price of $30,700. He presented this revised proposal to Christie at a meeting on March 3, 2006, and she signed her acceptance of this new proposal. It was at that March 3 meeting that Betts said he first learned of Christie's other changes to the landscape design. At the time, Rainmaster employees were in the process of installing the irrigation system as originally planned. According to Betts, the altered landscape design necessitated irrigation for a larger area than in the original plan. He said that he walked the property with Christie to discuss what would be required to accommodate the landscaping changes. He suggested that the proposed changes would save Christie money. Betts said that

---

[1] In addition, Rainmaster added a claim for promissory estoppel and a claim under the Georgia Prompt Pay Act, OCGA § 13-11-1 et seq.

Christie agreed to his proposed changes. Although Christie admitted that Betts told her changing the design would save her money, she said that she did not agree to any proposed changes. Christie acknowledged at trial, however, that after she changed the landscaping, it would be impossible to follow the irrigation plan exactly as shown on the December 2005 proposal.

Following that conversation, Rainmaster proceeded to lay out and install the new irrigation design. Rainmaster prepared a new proposal showing the altered design and a reduced price of $26,500, but Betts did not show Christie the new proposal until March 8, 2008, after the installation of the system. The project was not yet completed, however, because the electric company had not yet connected the power for the system, which was required before Rainmaster could complete its work.

Christie responded to the new proposal the next day in an e-mail to Betts. She questioned why the proposal showed a reduction of only $4,050 in light of the proposed changes. Additionally, she indicated that she had expected to see the proposal before the work was completed, as they agreed in the December 2005 proposal. Christie indicated that she would be willing to meet the following day to "hopefully arrive at a mutually satisfactory revision to our contract." She emphasized that "[n]o payments shall be made until we have an agreement." In response, Rainmaster sent Christie an itemized invoice by e-mail explaining the pricing for each unit of the design. This invoice showed the reduced irrigation plan with the lower price, and compared it directly with the higher-priced original plan, without the water feature. The invoice reflects, for example, that the original plan, as modified, called for 500 rotor and spray heads, while the revised plan called for only 319.

Betts met with Christie on March 10, 2006 to discuss the issue and to explain the adjustments in the design and the pricing. Betts requested a $20,000 deposit at that time, with the balance due upon completion. After their discussion, Christie agreed to pay a $15,000 deposit. Rainmaster sent Christie a new invoice memorializing the reduced design, with the lower contract price, and the payment of Christie's $15,000 deposit. Christie, however, never signed the proposal Betts presented to her on March 8. But Betts testified that it was not always common in his business to get signed change orders or contracts when the cost of the work is reduced, rather than increased.

When the power was connected to the system approximately one month later, Rainmaster went back on or around April 4, 2006, to complete the project. Due to the unusually windy conditions, however, Rainmaster had difficulty aligning the heads to spray water in the proper direction. Nevertheless, Rainmaster attempted to make

the appropriate adjustments and requested payment of the remaining amount due. After Christie expressed her concern that Rainmaster's new design would not provide adequate irrigation, Rainmaster annotated the invoice showing Christie's $15,000 payment with the handwritten warranty:

> that this new system, with fewer heads[,] will provide complete coverage. Should this system fail to provide complete coverage for *ANY REASON*, Rainmaster will fix this at no additional cost, even if additional heads are required, up to 500 heads and 22 zones. Rainmaster shall provide all parts and labor should new heads be required.

Christie wrote Rainmaster a check for the remaining balance of $11,500 at that time. That day, Rainmaster sent Christie a paid invoice and a five-year warranty on its work. Christie stopped payment on the check, however, explaining in an e-mail the next day that there were "serious problems with the sprinkler system." Although Rainmaster asked her to complete the payment and for the opportunity to come and make adjustments to the system, Christie did not want to pay them until the project was completed to her satisfaction. Further correspondence between the parties followed, but they were unable to resolve their differences and this litigation ensued.

Christie raises two enumerations of error on appeal. The first enumeration asserts that the trial court erred in allowing a verdict and judgment in favor of Rainmaster for $11,500 in compensatory damages, and the second enumeration alleges that the trial court erred in allowing a verdict and judgment awarding Rainmaster $19,000 in attorney fees. Each enumeration asserts the general grounds that the verdict and judgment were "illegal, not supported by the evidence and contrary to [Georgia] law." The first enumeration has eighteen sub-parts, each asserting a separate claim of purported error, and the second enumeration has four sub-parts. But we find that Christie failed to preserve the majority of these arguments for appellate review, and we will address only those arguments properly preserved below.

1. Enumerations 1B, 1C, 1D, 1F, and 1L assert that the trial court erred in failing to give jury charges on certain issues, including legal excuse, impossibility, and quantum meruit. Enumerations 1E, 1G, and 1H assert error in the charges the trial court did give the jury on impossibility and quantum meruit. But the record demonstrates that Christie failed to object on these grounds at trial. After instructing the jury, the trial court asked Christie's attorney for "any exceptions, suggestions, [or] corrections to the charge." The attorney

objected only "to the extent that the charge on negligence was not read to the jury," but Christie raises no argument on that ground on appeal. "In civil cases, exceptions or objections to charges must be made after the jury is charged and before the verdict; objections made at charging conferences before the charge is given do not preserve charging issues for appellate review."[2] (Citations and punctuation omitted.) *Vaughn v. Metro. Property &c. Ins. Co.*, 260 Ga. App. 573, 577 (9) (580 SE2d 323) (2003). By failing to raise objections below, Christie has failed to preserve these arguments for appeal. *Horton v. Hendrix*, 291 Ga. App. 416, 419 (1) (b) (662 SE2d 227) (2008); *Golden Peanut Co. v. Bass*, 249 Ga. App. 224, 233 (2) (547 SE2d 637) (2001).

2. Christie also takes issue with Rainmaster's response to her request to admit that the parties entered into a valid contract on December 23, 2005 and additionally asserts that the trial court erred in failing to rule at a rule nisi hearing that this contract was valid (Enumerations 1N & 1O). Christie, who at the time was representing herself pro se, filed motions to compel discovery, for partial summary judgment, to dismiss, to strike, for summary judgment, as well as an objection to Rainmaster's amended complaint. A rule nisi hearing on these matters was scheduled for April 11, 2007, but the record contains no transcript of that hearing. Christie asserts that the trial court erred in failing to rule on the validity of the December 2005 contract and that it instead ordered the parties to mediation. The record demonstrates that the trial court issued an order of mediation on April 12, 2007, and it contains no ruling on any of Christie's pro se motions.

In the absence of either a record or transcript of the rule nisi hearing, however, this Court must presume the correctness of the trial court's actions at the hearing. See *Murphy v. Varner*, 292 Ga. App. 747, 749 (3) (666 SE2d 53) (2008); *Hodge v. Lott*, 251 Ga. App. 288, 290 (1) (553 SE2d 652) (2001). Moreover, on October 5, 2007, Christie's trial counsel signed and submitted a proposed consolidated pre-trial order, which stated that "[a]ll discovery [with the exception of one deposition had] been completed, . . . and the court will not consider any further motions to compel discovery except for good cause shown." The pre-trial order also specified that she had no motions pending for consideration by the Court. Accordingly, we find that Christie failed to preserve any appellate arguments regarding Rainmaster's response to her discovery requests or to the trial court's failure to rule on the validity of the December 2005 contract

---

[2] In any event, the trial conference was not transcribed.

at the rule nisi hearing. See *Murphy v. Varner*, 292 Ga. App. at 749 (3).

3. Christie also asserts that the trial court erred in failing "to look to the contract to determine the requirements for payment" (Enumeration 1I); "in allowing Rainmaster to present a case for 'unjust enrichment'" (Enumeration 1J); "in failing to interpret a contract according to its plain language" (Enumeration 1K); and "in allowing Rainmaster to use 'impossibility' as a basis to recover" (Enumeration 1M). Enumeration 1P states only that "Rainmaster is not legally allowed to challenge the validity of their own contract, which was prepared by them, and was the basis for this lawsuit," without alleging any error by the trial court.

Christie has failed to show that she either raised an objection or that the trial court ruled on any of these grounds. "Appellate courts exist to review asserted error but where the (party) makes no objection or obtains no ruling of the trial court, the contended problem cannot be made the basis of appellate review as there is no ruling to review." (Punctuation and footnote omitted.) *Croft v. Fairfield Plantation Property Owners Assn.*, 276 Ga. App. 311, 314 (2) (623 SE2d 531) (2005). Accordingly, we do not address these enumerations.

4. In Enumeration 1A, Christie asserts that the trial court erred in allowing Rainmaster to use the courts to recover in full for a contract it breached; the contract states: "'Payment is due upon completion.'" We interpret this enumeration as a restatement of the general grounds asserted under Enumeration 1 itself, contesting the award of compensatory damages to Rainmaster. "Whether a jury verdict is contrary to the weight of the evidence is a question for the trial court, and where the trial court has accepted the verdict, the only question for an appellate court is whether there is any evidence sufficient to authorize the verdict. [Cit.]" *Moxley v. Moxley*, 281 Ga. 326, 328 (7) (638 SE2d 284) (2006). See also *Jackson v. Neese*, 276 Ga. App. 724, 727 (3) (624 SE2d 139) (2005).

Christie asserts that the verdict was not supported by the evidence as she contends that the record demonstrates that she did not breach the parties' December 2005 contract, but instead the evidence establishes that Rainmaster breached it. We find no merit to this argument, which ignores the fact that Rainmaster sought to recover not under the December 2005 contract, but rather under the parties' agreement as modified by a mutual decision to depart from the December 2005 proposal, as well as under alternative theories of recovery.

Although Betts acknowledged that the parties initially entered into a valid contract in December 2005, Christie herself admitted that the contract could not be performed in light of the changes to

the landscape design. Moreover after Rainmaster submitted its new proposal for a reduced irrigation plan at a contract price of $26,500, Christie made a partial payment of $15,000, and later wrote a check for the balance although she stopped payment on that check. It was for the jury to decide whether the parties mutually agreed to depart from the original agreement in light of the changes to the landscape plan[3] or whether Rainmaster was otherwise entitled to compensation for the work it performed under one of Rainmaster's alternative theories of recovery.[4] The evidence of record, although contested, was sufficient to support the jury's award in favor of Rainmaster, and we affirm the award of compensatory damages. See *Delson v. Ga. Dept. of Transp.*, 295 Ga. App. 84, 85 (1) (671 SE2d 190) (2008); *Trust Assoc. v. Snead*, 253 Ga. App. 475, 478 (2) (a) (559 SE2d 502) (2002) ("Where there exists some evidence to support the verdict, then the verdict should not be disturbed.") (citation omitted).

5. Christie also asserts that the trial court erred in allowing Rainmaster to use language from a protected settlement negotiation as evidence in the trial (Enumerations 1Q & 2R and Enumerations 2A & 2B). She argues that it was error for the trial court to allow Rainmaster to cross-examine her regarding a sentence from a letter she wrote in settlement negotiations in which she asserted that Rainmaster was likely to spend more money in litigating the case than its claim was worth.

Rainmaster did not specifically cross-examine her in connection with a settlement letter. Rather, the exchange at issue was more general in nature. Rainmaster's attorney asked Christie:

Q: You testified [that] you felt Rainmaster treated you poorly in this. Did you ever make a statement to Rainmaster that in this suit they'd spend more money in litigating this case than their claim was worth?

She replied, "Yes." Her attorney objected on the ground of relevancy. Rainmaster noted that Christie asserted that Rainmaster treated her poorly to support her claim of bad faith attorney fees, and that

---

[3] See generally *Vakilzadeh Enterprises v. Housing Auth. &c.*, 281 Ga. App. 203, 206 (635 SE2d 825) (2006) (whether parties' conduct constitutes mutual departure ordinarily a question for the jury); *Hill Roofing Co. v. Lowe's Home Centers*, 265 Ga. App. 822, 824 (2) (595 SE2d 638) (2004); *Bridgeboro Lime &c. Co. v. Hewitt Contracting Co.*, 221 Ga. 552, 555 (2) (146 SE2d 305) (1965).

[4] For example, the jury was entitled to decide whether Rainmaster could recover under a theory of quantum meruit. In this context, such a claim requires proof of "(1) the performance of valuable services; (2) accepted by the recipient or at his request; (3) the failure to compensate the provider would be unjust; and (4) the provider expected compensation at the time services were rendered." (Citation omitted.) *Amend v. 485 Properties*, 280 Ga. 327, 329 (627 SE2d 565) (2006).

the question was relevant to support Rainmaster's own claim for bad faith attorney fees. Christie's attorney next objected on the ground. that the statement was part of a larger settlement negotiation. The trial court overruled the objection on both grounds.

Rainmaster did not, however, attempt to introduce the settlement correspondence at trial, although earlier in the litigation, it had relied upon two pre-litigation letters from Christie in opposing her motion to compel discovery. Rainmaster asserted that Christie made the motion in bad faith and in violation of the parties' agreement on discovery issues. In support of its claim of bad faith, Rainmaster quoted Christie's assertion in the letters that Rainmaster "should be prepared to spend more in attorney fees than they can ever hope to recover in this action." Christie is asserting that Rainmaster's cross-examination question was based upon this correspondence, and thus was improperly admitted.

Under OCGA § 24-3-37, "propositions made with a view to a compromise are not proper evidence." But "[o]ne of the requisites for invocation of [this rule] is that the purpose of offering the evidence is to prove the validity or invalidity of the claim or its amount. Therefore, evidence offered for another purpose, such as showing bad faith, may be admissible." (Footnote omitted.) *Nevitt v. CMD Realty Investment Fund IV*, 282 Ga. App. 533, 537 (1) (c) (639 SE2d 336) (2006). See also *Ostroff v. Coyner*, 187 Ga. App. 109, 116 (5) (369 SE2d 298) (1988); *U-Haul Co. of Western Ga. v. Ford*, 171 Ga. App. 744, 745 (2) (320 SE2d 868) (1984). Pretermitting whether the question on cross-examination can be tied to any settlement correspondence, the question was not intended to solicit evidence to prove the validity of Rainmaster's claim or its amount. Rather, it was offered to support the company's claim for attorney fees. Because the evidence was limited to Rainmaster's claim under OCGA § 13-6-11, we find no error. *U-Haul Co. of Western Ga. v. Ford*, 171 Ga. App. at 745 (2).

6. Christie also argues that the award of attorney fees to Rainmaster on the ground of unnecessary trouble and expense cannot stand. She asserts that it was error to submit the issue of attorney fees to the jury because a bona fide controversy existed in the case, and further argues that Rainmaster failed to establish three requirements she contends are needed to support such an award based on unnecessary trouble and expense (Enumerations 2C & 2D).

"Attorney fees are recoverable under OCGA § 13-6-11 when a party has acted in bad faith, has been stubbornly litigious, or has subjected the other party to unnecessary trouble and expense." (Citation and punctuation omitted.) *City of Lilburn v. Astra Group*, 286 Ga. App. 568, 570 (649 SE2d 813) (2007). And "questions concerning bad faith, stubborn litigiousness, and unnecessary trouble

and expense under OCGA § 13-6-11 are generally questions for the factfinder to decide." (Citation and punctuation omitted.) *Clearwater Constr. Co. v. McClung*, 261 Ga. App. 789 (584 SE2d 61) (2003). "An award of attorney fees under OCGA § 13-6-11 will be affirmed if there is any evidence to support it." *Charter Drywall Atlanta v. Discovery Technology*, 271 Ga. App. 514, 517 (2) (610 SE2d 147) (2005).

(a) Christie asserts that the issue of attorney fees should not have been submitted to the jury because a bona fide controversy existed between the parties. We note first that both parties brought claims for attorney fees and entered into stipulations as to reasonableness of the amount of fees sought by each party. Moreover, even where a bona fide controversy exists, attorney fees may be awarded on the issue of bad faith. See *Merlino v. City of Atlanta*, 283 Ga. 186, 190 (4) (657 SE2d 859) (2008) (where bona fide controversy exists, attorney fees may only be awarded under the statute where the defendant has acted in bad faith). Both parties sought to recover attorney fees based upon a claim of bad faith, and Christie's counsel made no objection to the verdict form addressing an award of attorney fees. Under these circumstances, we find no error by the trial court in submitting the issue to the jury.

(b) Christie also asserts that the trial court erred in approving the award of attorney fees because Rainmaster failed to move for a protective order before seeking attorney fees and because the amended complaint did not make a claim for attorney fees on the specific basis of unnecessary trouble and expense. Christie did not raise these issues below, but instead consented to the submission of attorney fees to the jury and to the form of the verdict allowing such an award. Thus Christie has waived any appellate argument on these grounds. See *Witty v. McNeal Agency*, 239 Ga. App. 554, 556 (1) (b) (521 SE2d 619) (1999).

(c) Christie finally asserts that the trial court erred in awarding attorney fees because Rainmaster failed to prove that she caused the company unnecessary trouble and expense in the absence of a bona fide controversy between them as required under OCGA § 13-6-11. "The law is that where no bona fide controversy exists, forcing a plaintiff to resort to the courts in order to collect is plainly causing him to go to 'unnecessary trouble and expense.'" (Citations and punctuation omitted.) *Webster v. Brown*, 213 Ga. App. 845, 846-847 (2) (446 SE2d 522) (1994). "It is for the jury to determine whether there was a bona fide controversy, unless the facts preclude such a finding as a matter of law." *Daniel v. Smith*, 266 Ga. App. 637, 638 (1) (597 SE2d 432) (2004).

Given the record in this case, it is clear that bona fide controversies existed as to the nature of the parties' agreement in light of

the modifications to the landscape design and also as to whether Christie had breached any such agreement by failing to pay the balance in full without receiving an irrigation system to her satisfaction. The record did not demand a finding that Christie had breached the parties' agreement or otherwise owed Rainmaster the balance for the work performed. Thus, in the absence of a finding of bad faith on Christie's part, Rainmaster was not entitled to attorney fees under OCGA § 13-6-11 as a matter of law. See *Lowery v. Roper*, 293 Ga. App. 243, 246 (666 SE2d 710) (2008). Accordingly, we reverse the award of attorney fees to Rainmaster.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Doyle, J., concur.*

DECIDED JULY 10, 2009 —
RECONSIDERATION DENIED JULY 27, 2009 

*J. E. Wilson*, for appellant.
*Talley, Richardson & Cable, Craig L. Burnsed, James J. Phillips*, for appellees.