**FOURTH DIVISION**
**DOYLE, P. J.,**
**ANDREWS and BOGGS, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**July 11, 2012**

# In the Court of Appeals of Georgia

A12A0139. INGLES MARKETS, INC. et al. v. KEMPLER et al.     DO-006

DOYLE, Presiding Judge.

Lynn K. and Gary S. Kempler brought suit against Ingles Markets, Inc., and Ingles Acquisition of Georgia, LLC (collectively "the Appellants"),[1] for trespass, nuisance, and negligence and asking for attorney fees and punitive damages based on increased intrusion of storm water runoff from the Appellants' property to the Kemplers' property. The jury returned a verdict in favor of the Kemplers. The Appellants appeal, and for the reasons that follow, we affirm.

> If a jury has returned a verdict, which has been approved by the trial judge, then the same must be affirmed on appeal if there is any evidence to support it as the jurors are the sole and exclusive judges of

---

[1] The Kemplers also named as defendants R.W. Smith Co. and Lowe & Associates, Inc., but those parties are not a part of this appeal.

the weight and credit given the evidence. The appellate court must construe the evidence with every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in conflict. As long as there is some evidence to support the verdict, the verdict will be upheld on appeal.[2]

So viewed, the Kemplers' 100 acre property was valued at approximately $5 million prior to the Appellants' development of adjacent rural property. The Kemplers' property had a dirt road extension from their asphalt driveway to a main highway in the area and a small stream leading from the Appellants' property to a two-acre, deep-water pond, which the Kemplers used for irrigation and recreation. Prior to development of the Appellants' property, the small stream "barely trickled . . . unless it had just rained."

The Appellants acquired property adjacent to the Kemplers in 2007, and they began their development in early 2008, resulting in 26 acres of impervious surfaces, including paved surfaces, buildings, and soil stockpile for future development. Although the Appellants contracted to have a detention pond and outlet control

---

[2] (Punctuation omitted.) *Turner Broadcasting System, Inc. v. McDavid*, 303 Ga. App. 593, 593-594 (693 SE2d 873) (2010).

structure constructed to address the increased water runoff generated from the development of the property, runoff to the Kemplers' property increased fourfold. The Kemplers presented evidence that the increased water runoff resulted in erosion of the small stream, which previously handled the once small amounts of water runoff from the Appellants' property; piles of mud blocking the gate access to the Kemplers' dirt road; softened soil leading to fallen trees; collapsed fences; 15-inch ruts in the dirt road; litter and other debris washed onto the road and into the pond; increased silting and excessive turbidity in the pond, which resulted in fish kills and destruction of the pond ecosystem; increased water into the pasture below the lake, which became a "swamp" after the development and affected the Kemplers' ability to harvest hay from that field; and runoff from the pond into an adjacent river, leading to ecological concerns in those public waters.

Real estate appraiser Larry Thomas testified that the total amount of the diminished value of the Kempler property was $607,500, which consisted of amounts to protect the property from future harm, including approximately $195,000 to install a piping system to reroute the storm water runoff from the Appellants' property past the Kemplers' property and approximately $97,500 to pave the dirt road. Thomas also explained that the total number included permanent loss of value to the property of

3

approximately 13 percent and $75,000 to rehabilitate the pond. Mr. Kempler testified that as an emergency room physician, his job was very stressful, and he and Ms. Kempler purchased the property in order to have a relaxing place to live, which has been permanently affected by the acts of the Appellants. Mr. Kempler testified that he and his wife had "a miserable two years" attempting to resolve the issues with the Appellants' development and estimated about $300,000 of injury to his peace of mind and feelings as a result of the runoff issues.

The jury determined that the Appellants' acts and omissions constituted negligence for which the Appellants were 40 percent at fault for the damages resulting from these acts or omissions.[3] For this claim, the jury awarded the Kemplers $400,000. Next, the jury determined that the Appellants had created or maintained a permanent nuisance for which they were 80 percent liable[4] and awarded the Kemplers $150,000 for diminution of property value and $300,000 for the cost to protect the Kemplers' remaining property. Finally, the jury determined that the Appellants' acts or omissions created "wounded feelings, loss of peace of mind, discomfort,

---

[3] The jury determined that R.W. Smith Co. was ten percent at fault for the resulting damages and Lowe & Associates was fifty percent at fault.

[4] The jury determined that R.W. Smith Co. was 20 percent liable for creating or maintaining a nuisance.

unhappiness, and annoyance" to the Kemplers for which the Appellants were 80 percent responsible.[5] The jury awarded the Kemplers $125,000 for the injury to their feelings.

The jury also determined that the Appellants were liable for attorneys fees, costs, and punitive damages.

1. The Appellants argue that the trial court erred by expressly limiting the jury's obligation to consider the fault of unnamed non-parties. We disagree.

OCGA § 51-12-33 (c) states that "[i]n assessing percentages of fault, the trier of fact shall consider the fault of all persons or entities who contributed to the alleged injury or damages, regardless of whether the person or entity was, or could have been, named as a party to the suit." The statute continues, however, stating in subsection (d) that

> (1) Negligence or fault of a nonparty shall be considered if the plaintiff entered into a settlement agreement with the nonparty or if a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault[; and] (2) [t]he notice shall be given by filing a pleading in the action designating the nonparty and

---

[5] The jury determined that R. W. Smith Co. was 20 percent liable for acts or omissions creating wounded feelings, loss of peace of mind, discomfort, unhappiness, and annoyance.

setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault.

It is undisputed by the Appellants that they failed to file any notice pursuant to the terms of OCGA § 51-12-33 (d) (1). Lowe & Associates provided notice that non-party Sae Soon Korean Church was at fault for some damages to the Kemplers' property. Pursuant to this notice, the trial court instructed the jury that it should consider the liability of the Church when deliberating. The Appellants now contend that this instruction was based on an erroneous reading of the statute by the trial court, namely that subsection (c) requires the jury to deliberate on the liability of *all* potential non-parties and subsection (d) does not place a limit on that requirement, but rather allows for the express consideration of particular non-parties. This reasoning is unpersuasive.

OCGA § 51-12-33 (c) simply explains that all non-party tortfeasors, regardless of whether they can be held liable for their actions, should be considered by the jury during deliberations. Subsection (d) provides the mechanism by which the defendant

6

exercises its statutory right to have such non-party tortfeasors presented to the jury.[6]

Contrary to the Appellants' contentions, this reading of the statute does not render (c)

superfluous in any way. Accordingly, this enumeration is without merit.

2. The Appellants also argue that the trial court erred by entering judgment

based on the jury verdict because the verdict form awarded impermissible double

damages.

> Generally, the jury's award cannot be successfully attacked so as to warrant a new trial unless it is so flagrantly excessive or inadequate, in light of the evidence, as to create a clear implication of bias, prejudice or gross mistake on the part of the jurors. Even though the evidence is such as to authorize a greater or lesser award than that actually made, the appellate court will not disturb it unless it is so flagrant as to shock the conscience. Moreover, the trial court's approval of the verdict creates a presumption of correctness that will not be disturbed absent compelling evidence. A verdict will not be set aside as unsupported by the evidence when the amount of it is within the range covered by the testimony, though it may not correspond with the contentions of either party.[7]

---

[6] See *McReynolds v. Krebs*, 307 Ga. App. 330, 333 (1) (705 SE2d 214) (2010).

[7] (Citation and punctuation omitted.) *McDavid*, 303 Ga. App. at 609 (4).

7

Moreover, "a plaintiff [is prohibited] from a double recovery of damages; the plaintiff is entitled to only one recovery and satisfaction of damages, because such recovery and satisfaction is deemed to make the plaintiff whole."[8]

(a) *Trespass/Nuisance Award*

The Appellants first contend that the jury's award for the Kemplers' trespass/nuisance claim constitutes an impermissible double recovery because it awarded damages both for diminution of value and for future costs to protect the property from additional deterioration. The Appellants rely on *Ga. Northeastern R. v. Lusk*,[9] in support of its contention that such an award is impermissible double recovery as a matter of law. Nevertheless, the Supreme Court recently explained its holding in *Lusk*, stating that the Court "did not rule that Georgia law precludes a diminution in value award in addition to restoration and repair costs where the repair does not fully restore the property to its pre-damage value."[10] This is because "the

---

[8] (Punctuation omitted.) *Monterrey Mexican Restaurant of Wise, Inc. v. Leon*, 282 Ga. App. 439, 450 (5) (c) (638 SE2d 879) (2006) (award for claims of money had and received and of conversion amounted to double recovery).

[9] 277 Ga. 245 (587 SE2d 643) (2003).

[10] *Royal Capital Dev. LLC v. Maryland Cas. Co.*, __ Ga. __, __ (2) (Case No. S12Q0209; decided May 29, 2012).

measure of damages in such cases is intended to place an injured party, as nearly as possible, in the same position they would have been if the injury had never occurred."[11] The Court continued:

> [i]n applying these principles, this Court has recognized that under Georgia law, cost of repair and diminution in value can be alternative, although often interchangeable, measures of damages with respect to real property. [Nevertheless,] [a]lthough unusual, it may sometimes be appropriate, in order to make the injured party whole, to award a combination of both measures of damages. In such cases, notwithstanding remedial measures undertaken by the injured party, there remains a diminution in value of the property, and an award of only the costs of remedying the defects will not fully compensate the injured party.[12]

Here, the trial court properly instructed the jury that they could not award duplicative amounts with regard to repairing the property and the amount of the diminished value of the property, The verdict form also establishes that the jury made a determination based on the testimony presented at trial, awarding $300,000 to the Kemplers for the cost to protect the property from future erosion and $150,000 for the amount of diminished value of the property sustained to that point. The Kemplers

---

[11] Id. at __ (1).

[12] (Citations and punctuation omitted.) Id. at __ (1).

testimony also supported the jury's $125,000 award for injured feelings based on the nuisance.[13]

(b) *Simultaneous Trespass/Nuisance and Negligence Awards*

The Appellants' claim that improper double damages were awarded because the jury granted awards on both the nuisance and negligence claims is without merit. The testimony at trial established damages to the property including diminished value and costs to protect the property at over $600,000. This total amount was not reflected in the jury's nuisance award, and the jury was authorized to award additional general damages based on the parties' negligence within its "enlightened conscience" and based on the testimony presented at trial.[14] The Appellants have failed to establish that the fact that the jury chose to allocate certain amounts of the special damages proven by the testimony between the two causes of action is reversible error.

---

[13] See *City of Gainesville v. Waters*, 258 Ga. App. 555, 558 (2) (574 SE2d 638) (2002) ("The measure of damages for discomfort, loss of peace of mind, unhappiness and annoyance of the plaintiff caused by the maintenance of a nuisance is for the enlightened conscience of the jury.") (punctuation omitted).

[14] See OCGA § 51-12-2 (a) ("General damages are those which the law presumes to flow from any tortious act; they may be recovered without proof of any amount.").

3. The Appellants contend that the trial court erred by denying their motion for mistrial on the basis of Mr. Kempler's testimony. The Appellants failed to lodge a contemporaneous objection to this testimony, and thus, they have waived this argument.[15]

4. Ingles Acquisition maintains that the trial court erred by denying its motions, including its motion for directed verdict because the Kemplers failed to present evidence that Ingles Acquisition committed any act or omission leading to the Kemplers' damages.[16] We disagree.

"A directed verdict is proper only where there is no conflict in the evidence as to any material issue and the evidence introduced with all reasonable inferences

---

[15] See *Ivy Road Properties, LLC v. First Citizens Bank & Trust Co.*, 311 Ga. App. 409, 410 (1) (715 SE2d 809) (2011). See also *Gilliam v. State*, 240 Ga. App. 158, 159 (1) (522 SE2d 766) (1999), citing *Stephens v. State*, 232 Ga. App. 738, 739 (2) (503 SE2d 643) (1998) and *Sweeney v. State*, 233 Ga. App. 862, 865 (4) (506 SE2d 150) (1998).

[16] Ingles Acquisition also argues that the trial court erred by denying its motion for summary judgment on this issue, which we do not review after entry of a verdict and judgment. See *Bailey v. Annistown Road Baptist Church, Inc.*, 301 Ga. App. 677, 685 (4) (689 SE2d 62) (2009).

11

therefrom demands a particular verdict. On appeal, the standard of review of a trial court's denial of a motion for directed verdict is the any evidence standard."[17]

(a) With regard to their nuisance/trespass claim, "the essential element of nuisance is control over the cause of the harm. The tortfeasor must be either the cause or a concurrent cause of the creation, continuance, or maintenance of the nuisance."[18] The Kemplers presented evidence that Ingles Acquisition owned the property from which the increased storm water runoff damaged the Kempler property, and its employees were aware of the problems associated with the development with regard to the Kemplers' property. As an adjoining landowner, Ingles Acquisition owed a duty to the Kemplers, and based on the testimony presented that agents at Ingles Acquisition were aware of the Kemplers' complaints, the jury was authorized to find that Ingles Acquisition breached its duty and was liable to the Kemplers for nuisance/trespass.[19]

---

[17] (Punctuation omitted.) *Sumitomo Corp. of America v. Deal*, 256 Ga. App. 703, 706-707 (2) (569 SE2d 608) (2002).

[18] (Punctuation omitted.) Id. at 707 (2).

[19] See *Green v. Eastland Homes, Inc.*, 284 Ga. App. 643, 648-649 (2) (644 SE2d 479) (2007) ("one who creates a nuisance is liable for it even if he has sold the property containing the nuisance") (punctuation omitted).

(b) With regard to the Kemplers' negligence claim, the Appellees presented evidence that, prior to quitclaiming its interest in the property to Ingles Markets, Ingles Acquisition owned the property when the development failed to comply with state statutes and when the contractor in charge of installing the detention pond in May 2007 failed to install it by early 2008. Accordingly, this enumeration is without merit.

5. Finally, the Appellants argue that the trial court erred by entering judgment based on the jury verdict because the jury failed to properly apportion liability between Ingles Markets and Ingles Acquisition. We disagree.

If there was any error in the trial court's entry of the jury verdict, it was invited error.[20] During closing argument, trial counsel, representing both Ingles Acquisition and Ingles Markets, argued to the jury that the two entities were "really just one company . . . . There's no evidence that there's any separate action by Ingles Acquisition as to control, ownership, having anything to do with this property, we're

---

[20] See, e.g., *Jackson v. Neese*, 276 Ga. App. 724, 725 (1) (624 SE2d 139) (2005). See also *Green v. Sommers*, 254 Ga. App. 446, 446-447 (1) (562 SE2d 808) (2002) (induced error provides no basis for reversal on appeal); *Wallace v. Swift Spinning Mills, Inc.*, 236 Ga. App. 613, 616 (2) (511 SE2d 904) (1999) ("It is a well-settled appellate rule that one cannot complain about a ruling of the trial court which the party's own trial tactics or conduct procured or aided in causing.") (punctuation omitted).

13

just Ingles. And please treat us that way when you're considering the numbers, whatever you consider." "[A] party cannot, in the hope or expectation of obtaining a verdict in his own favor, follow a trial tactic which he may believe to be advantageous but which results in a waiver and, when a verdict is returned which he now seeks to overturn, enumerate the error as a ground for setting it aside."[21] Accordingly, this enumeration is without merit.

*Judgment affirmed. Andrews and Boggs, JJ., concur.*

---

[21] (Punctuation omitted.) *Le Twigge, Ltd. v. Wammock & Co.*, 187 Ga. App. 446, 448 (370 SE2d 631) (1988).