**FOURTH DIVISION**
**DILLARD, C. J.,**
**DOYLE, P. J., and MERCIER, J.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
http://www.gaappeals.us/rules

**March 7, 2019**

# In the Court of Appeals of Georgia

A18A1508. TRABUE et al. v. ATLANTA WOMEN'S SPECIALISTS, LLC et al.    DO-056

A18A1552. ANGUS v. TRABUE et al.    DO-061

A18A1553. ATLANTA WOMEN'S SPECIALISTS, LLC v. TRABUE et al.    DO-062

A18A1554. ANGUS v. TRABUE et al.    DO-063

A18A1555. TRABUE et al. v. ANGUS.    DO-064

DOYLE, Presiding Judge.

Keith Trabue, individually and as guardian of his wife, Shannon Maria Trabue, and Advocacy Trust of Tennessee, LLC, as her conservator, filed a renewal medical malpractice action in Fulton County State Court against Atlanta Women's Specialists, LLC ("AWS"), and Dr. Stanley R. Angus after Shannon suffered a catastrophic brain injury four days after giving birth. The jury awarded the plaintiffs $46 million. The defendants moved for a new trial, arguing that the trial court erred (1) by permitting

evidence of the alleged negligence of Dr. Rebecca Simonsen, a non-party physician also employed by AWS, because claims against AWS for her actions were not raised and were barred by the statutes of limitation and repose; and (2) by failing to require the jury to apportion fault between Dr. Angus and AWS on behalf of Dr. Simonsen in accordance with OCGA § 51-12-33 (b). The trial court rejected the former claim but granted a new trial on the limited issue of the allocation of fault between the party defendants based on Dr. Simonsen's negligence, instructing that "[t]he jury's prior findings on liability and its calculation of damages shall remain intact upon the trial as to apportionment." This Court granted the parties' interlocutory applications, and these appeals of that order followed.[1] For the reasons that follow, we affirm in part, reverse in part, vacated in part, and remand for proceedings consistent with this opinion.

---

[1] In Case No. A18A1508, the plaintiffs directly appeal the order on the defendants' motion for new trial; in Case No. A18A1552, Dr. Angus cross- appeals Case No. A18A1508; in Case No. A18A1553, AWS directly appeals the order; in Case No. A18A1554, Dr. Angus directly appeals the order; and in Case No. A18A1555, the plaintiffs cross-appeal Case No. A18A1554. Because they arise from the same proceeding, we consolidate all five appeals.

2

We review de novo the grant of a motion for new trial on special grounds involving a question of law, and we will "reverse if the trial court committed legal error."[2]

So viewed, the record shows that on August 21, 2009, 38-year-old Shannon was admitted to Northside Hospital for induction of labor due to hypertension and gave birth via cesarean section. The child was delivered without complications by Dr. Juanita Wyatt-Hathaway. Shannon's blood pressure remained persistently elevated, and Dr. Wyatt-Hathaway prescribed an infusion of magnesium sulfate and a loading dose of intravenous fluids, and she later prescribed Labetalol and discontinued the magnesium sulfate. Dr. Simonsen then took over Shannon's care after being informed of her recent elevated blood pressure, shortness of breath, decreased urinary output, and pulse oximetry of 95 percent. Dr. Angus then assumed control of Shannon's care, and he evaluated her and increased the Labetalol. At 5:00 p.m. on August 25, 2009, Dr. Angus ordered the insertion of an intravenous line, lab tests, and a spiral CT scan to rule out a pulmonary embolism. En route to the CT scan, Shannon sustained a respiratory arrest, which progressed to a full cardiopulmonary arrest. She coded at

---

[2] *Govt. Employees Ins. Co. v. Progressive Cas. Ins. Co.*, 275 Ga. App. 872, 873-874 (1) (622 SE2d 92) (2005).

5:43 p.m., and resuscitation efforts commenced. A subsequent chest x-ray revealed pulmonary edema. Consequently, Shannon suffered a hypoxic brain injury and has been rendered totally disabled.

On August 18, 2011, the plaintiffs filed a medical malpractice action against AWS and Dr. Angus, alleging vicarious liability against AWS and the negligence of Dr. Angus. The complaint alleges that Drs. Angus, Wyatt-Hathaway, and Simonsen were agents of AWS, acting within the scope of their agency when the proximately caused Shannon's injuries, so that their wrongful acts and omissions are imputed to AWS, which is vicariously liable for their acts and omissions. The plaintiffs also noted therein that they reserved the right to add Drs. Wyatt-Hathaway and Simonsen as party defendants if AWS or Dr. Angus alleged that they contributed to Shannon's injuries. The plaintiffs attached an OCGA § 9-11-9.1 expert affidavit by Dr. Paul Gatewood, who averred that the care and treatment rendered by Dr. Angus fell below the standard of care required. Dr. Gatewood offered no opinion as to the negligence of the other physicians involved in Shannon's care.

On May 7, 2014, the plaintiffs voluntarily dismissed the case against Dr. Angus and AWS; on August 15, 2014, they filed a renewal action. The second complaint mirrored the first, with the exception of an additional expert affidavit from Dr. Eric

4

Lichter, which essentially tracked that of Dr. Gatewood except that Dr. Lichter incorporated by reference the opinions he gave in his deposition in the first case.[3] During Dr. Lichter's deposition, he offered standard of care criticisms against the nurses and Drs. Wyatt-Hathaway, Simonsen, and Angus. His allegations of negligence in his affidavit, however, pertained only to Dr. Angus.

The parties filed a consolidated pretrial order in the case on July 20, 2016. In the plaintiffs' outline of the case, they expressly stated that Dr. Simonsen's negligence, along with that of Dr. Angus, caused Shannon's injuries. Specifically, the plaintiffs alleged that Dr. Simonsen took over Shannon's care at 8:00 a.m. on August 25, 2009, but saw Shannon only once during the shift at 10:30 p.m., despite several calls from nurses advising of serious problems with Shannon's condition, which put Shannon at a foreseeable risk of pulmonary edema and cardiopulmonary complications. The plaintiffs listed the question of Dr. Simonsen's negligence as one for jury determination, specifying 41 allegations of negligence against her in addition to those against the named defendants, Dr. Angus and AWS.

On August 12, 2016, the defendants filed a motion in limine to exclude all evidence or argument criticizing Dr. Simonsen and anyone other than Dr. Angus,

---

[3] The transcript of Dr. Lichter's testimony was not attached to the affidavit.

arguing that because no claim has been asserted based on the conduct of Dr. Simonsen, criticisms of her care should be excluded. On September 12, 2016, the plaintiffs moved to amend the pretrial order to file Dr. Lichter's amended and supplemental affidavit, which included allegations of negligence against Dr. Simonsen. The plaintiffs pointed out that two paragraphs of the original and refiled complaint alleged that Dr. Simonsen was an agent and employee of AWS at all applicable times and that AWS was liable for injuries cased by her wrongful acts and omissions; that the factual allegations included Dr. Simonsen's role in Shannon's treatment; that the defendants did not object to the original or renewed affidavits of Dr. Lichter; and that the defendants were on notice of the imputed liability claim, evidenced by their second affirmative defense, which stated that neither Dr. Angus nor any other agent or employee violated the applicable standard of care but rather exceeded it. The defendants opposed the motion and moved for partial summary judgment, arguing that the amended affidavit was barred by the statute of limitations and therefore did not relate back to the original complaint.

The trial court denied the defendants' motions in limine with regard to evidence criticizing Dr. Simonsen and motions for partial summary judgment, and it granted the plaintiffs' motion to amend the pretrial order to file Dr. Lichter's amended

affidavit. During the two-week trial, the defendants moved for a directed verdict on the same grounds raised in their partial summary judgment motion, and the trial court denied the motion. After the close of the evidence, the defendants asked the court to apportion damages pursuant to OCGA § 51-12-33 (b).[4]

The jury entered its verdict in favor of the plaintiffs on a special verdict form, which asked the following: "Was the negligence of any of Defendant Atlanta Women Specialists' physician employees a contributing proximate cause of the injury to Shannon Trabue? If so, place an X in the blank before each physician employee whose negligence was a proximate cause of her injury." The physician employees listed were Drs. Angus and Simonsen. The jury answered "yes" and placed an X next to both physicians' names. The jury awarded economic loss damages of almost $10 million and awarded $18 million compensatory damages to each plaintiff. The trial court then entered the judgment on the verdict.

---

[4] It is not entirely clear between which parties the defendants sought to apportion damages. During a colloquy, defense counsel stated: "AWS . . . is responsible for actions of Angus[,] and AWS can be responsible for actions of Simonsen. . . . [I]f it's both, then I think the jury under the statute should assign the percentages between the two of them. . . . If there are going to be separate claims against AWS on the verdict form, then the verdict form should have the jury assign a percentage for each of their separate actions. Are they both employees? Yes." Defense counsel further stated: "I object to having separate claims against AWS for two different actors without apportionment of the liability between the two."

7

On April 7, 2017, the defendant moved for a new trial, alleging, among other things, that the trial court erred by failing to require the jury to apportion fault between Dr. Angus and AWS on behalf of Dr. Simonsen pursuant to OCGA § 51-12-33 (b) and by permitting evidence of the alleged negligence of Dr. Simonsen because claims against her were not raised in the complaints and were barred by the statutes of limitation and repose. The plaintiffs moved to amend the judgment to add attorney fees, litigation expenses, and pre-judgment interest under OCGA §§ 9-11-68 and 51-12-14. After considering the various briefs filed by the parties, the trial court denied the motion for new trial on all grounds except its failure to require the jury to apportion fault, ordering a new trial as to apportionment only. It denied the plaintiffs' motion to amend the judgment as premature, given its ruling granting a new trial as to apportionment. The trial court certified its order on the motion for new trial for immediate review, this Court granted the defendants' interlocutory applications, and these appeals followed.

*Case Nos. A18A1552, A18A1553, and A18A1554*

1. *AWS's vicarious liability based on Dr. Simonsen*. The defendants contend that the trial court erred by permitting the jury to consider whether Dr. Simonsen's

8

negligence was a contributing proximate cause of injury to Shannon. This enumeration is without merit.

(a) First, the defendants argue that the plaintiffs failed to timely and properly plead a vicarious liability claim against AWS for Dr. Simonsen's negligence. We disagree.

In the initial complaint filed in 2011, the plaintiffs described in detail the care provided by Shannon's doctors, including Dr. Simonsen. In Count 1, titled "Claim for Vicarious Liability as to Defendant AWS," the plaintiffs state:

> 37. At all times applicable to this [c]omplaint, . . . Rebecca Simonsen, M.D. [was] the actual, apparent, or ostensible agent[] or employee[] of . . . AWS, acting within the scope of [her] agency or employment, in pursuit of . . . AWS's business so that [her] wrongful acts and omissions are imputed to . . . AWS[,] and . . . AWS is subject to liability for injuries and harm proximately caused by [her] wrongful acts or omissions.

> 38. Defendant AWS and Dr. . . . Simonsen are hereby put on notice, by copy of this complaint, that in the event [any of the defendants] alleges that the actions of . . . Dr. Simonsen, or any other person acting within the scope of his/her agency or employment with . . . AWS, proximately or legally caused or contributed to the injuries suffered by [Shannon], [the plaintiffs] reserve[] the right to add said doctor as a defendant herein.

The expert affidavit attached to the original complaint did not include any opinion regarding Dr. Simonsen's care of Shannon. The 2015 renewal complaint set forth the same factual and legal assertions as to Dr. Simonsen, and the expert affidavit filed therewith incorporated by reference the opinions he gave in his deposition in the original action, which opinions included standard of care criticisms of Dr. Simonsen.

In their outline of the case in the consolidated pretrial order, the plaintiffs stated that Dr. Simonsen's negligence caused Shannon's injuries, listing 41 specific allegations of negligence. They also indicated that whether Dr. Simonsen was negligent and whether her negligence was a proximate cause of Shannon's injuries were issues for determination by the jury. The plaintiffs then, with the permission of the trial court, amended the pretrial order to include Dr. Lichter's amended affidavit, which included allegations of negligence against Dr. Simonsen.

In a medical malpractice case, Georgia law requires only that "any pleading which sets forth a claim for relief . . . shall contain . . . [a] short and plain statement of the claims showing that the pleader is entitled to relief[.]"[5] "[T]he Georgia Civil Practice Act requires only notice pleading and, under the Act, pleadings are to be

---

[5] OCGA § 9-11-8 (a) (2) (A). *Tenet HealthSystem GB, Inc. v. Thomas*, 304 Ga. 86, 89 (816 SE2d 627) (2018).

construed forgivingly and reasonably to achieve substantial justice consistent with the statutory requirements of the Act."[6]

In *Oller v. Rockdale Hosp., LLC*,[7] this Court held that the plaintiffs properly stated a vicarious liability claim against a defendant medical practice, even though none of the negligent physicians were identified specifically.[8] This Court explained that because the timely-filed renewal complaint alleged that the practice was vicariously liable for the negligence of the physicians that treated the decedent, the defendant practice "was provided with sufficient notice of the agents for which it was allegedly responsible."[9]

The same rationale applies to this case. Here, the original and renewal complaints specifically identified Dr. Simonsen as an agent or employee of AWS, acting within the scope of her employment or agency, such that her acts and omissions are imputed to AWS, which is vicariously liable for the resulting injuries

---

[6] (Punctuation omitted.) *Walker v. Oglethorpe Power Corp.*, 341 Ga. App. 647, 669-670 (5) (d) (802 SE2d 643) (2017).

[7] 342 Ga. App. 591, 593-594 (804 SE2d 166) (2017), cert. denied Aug. 20, 2018.

[8] See id. at 593.

[9] Id. at 593-594.

11

and harm to Shannon, and the pleadings set forth factual allegations to support the plaintiffs' vicarious liability claims against AWS for Dr. Simonsen's actions. Thus, the trial court properly concluded that the complaints satisfy Georgia's forgiving notice-pleading requirements with respect to the vicarious liability claim against AWS for the negligence of Dr. Simonsen.[10]

Further, we find meritless the defendants' contention that the plaintiffs' expert affidavits filed with their initial and renewal complaints are defective because they offered no criticism of Dr. Simonsen. An OCGA § 9-11-9.1 expert affidavit must simply specify at least one negligent act or omission and the factual basis for the claim, and it may be amended to track the language of the complaint.[11] Here, both the

---

[10] See id.

[11] See id. at 595. See 9-11-9.1 (e) ("If a plaintiff files an affidavit which is allegedly defective, and the defendant to whom it pertains alleges, with specificity, by motion to dismiss filed on or before the close of discovery, that said affidavit is defective, the plaintiff's complaint shall be subject to dismissal for failure to state a claim, except that the plaintiff may cure the alleged defect by amendment pursuant to [OCGA §] 9-11-15 within 30 days of service of the motion alleging that the affidavit is defective. The trial court may, in the exercise of its discretion, extend the time for filing said amendment or response to the motion, or both, as it shall determine justice requires."). See also *Bonner v. Peterson*, 301 Ga. App. 443, 446-446-447 (1) (687 SE2d 676) (2009) (holding that the plaintiff is permitted to amend a timely expert affidavit "so that it adequately supports each claim of malpractice asserted against each of the defendants named in the complaint").

12

initial and renewal complaints alleged claims against AWS based on the care and treatment provided by Dr. Simonsen. And Dr. Lichter's affidavit filed with the renewal complaint incorporated by reference his deposition given in the initial action, wherein he criticized Dr. Simonsen's care and treatment of Shannon. This Court has "allowed an expert's deposition from an original malpractice action to be incorporated into the complaint of the renewed action because this 'complied with the spirit, if not the letter, of OCGA § 9-11-9.1.'"[12] And by consent order entered on December 29, 2014, all discovery and depositions taken in the initial case were incorporated for use in the renewal action. Thus, pretermitting whether the defendants waived any right to object thereto, Dr. Lichter's affidavit complied with OCGA § 9-11-9.1.[13]

(b) Next, the defendants argue that the plaintiffs' claims for vicarious liability based on the conduct of Dr. Simonsen were barred by the two-year statute of limitation and the five-year statute of repose. Pretermitting whether the defendants waived these arguments, they provide no basis for reversal.

---

[12] (Punctuation omitted.) *Raskin v. Wallace*, 215 Ga. App. 603, 605 (2) (451 SE2d 485) (1994).

[13] See *Bonner*, 301 Ga. App. at 447 (1).

13

Shannon was injured on August 25, 2009. Thus, the statute of limitation did not expire until August 25, 2011,[14] and the statute of repose did not expire until August 25, 2014.[15] The plaintiffs filed their initial complaint on August 8, 2011, asserting a vicarious liability claim against AWS for the negligence of Dr. Simonsen. After voluntarily dismissing their complaint of May 7, 2014, the plaintiffs filed a timely, identical renewal complaint on August 15, 2014, with Dr. Lichter's affidavit incorporating his deposition testimony, within the statute of limitation and before the statute of repose expired on August 25, 2014.[16]

---

[14] See OCGA § 9-3-71 (a) (Generally, "an action for medical malpractice shall be brought within two years after the date on which an injury or death arising from a negligent or wrongful act or omission occurred.").

[15] See OCGA § 9-3-71 (b) ("[I]n no event may an action for medical malpractice be brought more than five years after the date on which the negligent or wrongful act or omission occurred.").

[16] See OCGA § 9-2-61 (a) (providing in relevant part that "[w]hen any case has been commenced in . . . a state . . . court within the applicable statute of limitation[] and the plaintiff . . . dismisses the same, it may be recommenced in a court of this state . . . either within the original applicable period of limitation[] or within six months after the . . . dismissal"). And "a plaintiff's right to amend an expert affidavit pursuant to OCGA § 9-11-9.1 (e) is in no way tied to the statute of limitation." *Bonner*, 301 Ga. App. at 447 (1). We note that AWS's reliance in its supplemental brief on the recently decided case *Preferred Women's Healthcare, LLC v. Sain*, ___ Ga. App. ___ (Case No. A18A1544, decided Jan. 28, 2019), is misplaced. The holding in *Preferred Women's Healthcare* is expressly limited to cases in which an amended filed after expiration of the statute of repose adds a new party under OCGA

2. *Retrial on apportionment.* The plaintiffs contend that the trial court erred by ordering a new trial as to apportionment. We agree.

OCGA § 51-12-33 (d) (1) provides in relevant part that "[n]egligence or fault of a nonparty shall be considered if . . . a defending party gives notice not later than 120 days prior to the date of trial that a nonparty was wholly or partially at fault."[17] "[T]he plain and unambiguous meaning of OCGA § 51-12-33 (d) (1)'s text mandates *strict* compliance. . . ."[18] Accordingly, failure to give proper timely notice precludes apportionment between a nonparty and a party.[19]

---

§ 9-11-21 that was neither referred to nor mentioned in the original complaint and asserts a new claim against that defendant. Here, the plaintiffs never sought to add Dr. Simonsen as a party, and their timely-filed original complaint alleged that AWS is vicariously liable for Dr. Simonsen's negligence. Thus *Preferred Women's Healthcare* is inapposite.

[17] "The notice shall be given by filing a pleading in the action designating the nonparty and setting forth the nonparty's name and last known address, or the best identification of the nonparty which is possible under the circumstances, together with a brief statement of the basis for believing the nonparty to be at fault." OCGA § 51-12-33 (d) (2).

[18] (Emphasis in original.) *Monitronics, Intl., Inc. v. Veasley*, 323 Ga. App. 126, 137 (3) (746 SE2d 793) (2013).

[19] See id. at 137-138 (3); *Freese II, Inc. v. Mitchell*, 318 Ga. App. 662, 666-667 (4) (734 SE2d 491) (2012); *Ingles Markets v. Kempler*, 317 Ga. App. 190, 192-193

15

It is undisputed that the defendants failed to give notice of nonparty fault as required by OCGA § 51-12-33 (d).[20] Instead, the defendants argue that damages should have been apportioned between Dr. Angus and AWS according to Dr. Angus's and Dr. Simonsen's relative fault and that because both Dr. Angus and AWS are parties, the 120-day notice requirement of OCGA § 51-12-33 (d) does not apply. The defendants argue, therefore, that apportionment is proper under OCGA § 51-12-33 (b), which governs apportionment between parties and does not contain a notice requirement.[21] This argument is meritless.

_____

(1) (730 SE2d 444) (2012).

[20] During trial, at the conclusion of the evidence, the defendants orally sought to apportion damages. At that time, the defendants conceded that they had not given statutory notice under OCGA § 51-12-33 (d). We note that the amended consolidated pretrial order, in which the plaintiffs were permitted to file Dr. Lichter's amended expert affidavit, was filed on July 20, 2016, more than six months before the trial began on February 6, 2017.

[21] See OCGA § 51-12-33 (b) ("Where an action is brought against more than one person for injury to person or property, the trier of fact, in its determination of the total amount of damages to be awarded, if any, shall after a reduction of damages pursuant to subsection (a) of this Code section, if any, apportion its award of damages among the persons who are liable according to the percentage of fault of each person. Damages apportioned by the trier of fact as provided in this Code section shall be the liability of each person against whom they are awarded, shall not be a joint liability among the persons liable, and shall not be subject to any right of contribution.").

16

The plaintiffs sued AWS only for its stipulated liability as the employer of Drs. Angus and Simonsen; they asserted no direct liability claim against AWS. An employer's vicarious liability is derivative and imposed by statute, based solely on its status as the active tortfeasor's employer.[22] As the Supreme Court of Georgia explained in *Johnson Street Properties, LLC v. Clure*,[23] "fault" as used in OCGA § 51-12-33 extends to those who "have breached a legal duty in the nature of a tort that is owed for the protection of the plaintiff, the breach of which is a proximate cause of his injury."[24] Therefore,

> [g]enerally, where a party's liability is solely vicarious, that party and the actively-negligent tortfeasor are regarded as a single tortfeasor. Thus, where a defendant employer's liability is entirely dependent on

---

[22] See OCGA § 51-2-2 ("Every person shall be liable for torts committed by his . . . servant by his command or in the prosecution and within the scope of his business, whether the same are committed by negligence or voluntarily.").

[23] 302 Ga. 51 (805 SE2d 60) (2017).

[24] (Punctuation omitted.) Id. at 58 (1) (b), quoting *Martin v. Six Flags Over Ga., L.P.*, 301 Ga. 323, 337 (III) (801 SE2d 24) (2017). See also *Zaldivar v. Prickett*, 297 Ga. 589, 600 (1) (774 SE2d 688) (2015) ("OCGA § 51-12-33 (c) requires the trier of fact in cases to which the statute applies to 'consider the fault of all persons or entities who contributed to the alleged injury or damages,' meaning all persons or entities who have breached a legal duty in tort that is owed with respect to the plaintiff, the breach of which is a proximate cause of the injury sustained by the plaintiff.").

17

principles of vicarious liability, such as respondeat superior, . . . unless additional and independent acts of negligence over and above those alleged against the servant or employee are alleged against the employer, a verdict exonerating the employee also exonerates the employer.[25]

Here, because AWS's liability to the plaintiffs "was purely vicarious in nature for the acts of [Dr. Simonsen]," apportionment is not proper between AWS and Dr. Angus.[26] Notwithstanding the defendants' attempts to characterize their request for apportionment as between parties, they actually seek to apportion between Dr. Angus and Dr. Simonsen, a non-party under OCGA § 51-12-33 (b). By failing to give the mandatory notice required by that Code section, the defendants waived their right to apportion damages in that manner.[27] Thus, the trial court erred by granting a new trial as to apportionment, and we therefore reverse that portion of the order.

3. *Attorney fees.* The plaintiffs also argue that the trial court erred by ruling that their claim for attorney fees and expenses was premature. In light of our holding in

---

[25] (Punctuation omitted.) *PN Express, Inc. v. Zegel*, 304 Ga. App. 672, 680 (5) (697 SE2d 226) (2010).

[26] (Punctuation omitted.) Id.

[27] See *Monitronics*, 323 Ga. App. at 137-138 (3).

18

Division 2 reversing the trial court's grant of a new trial as to apportionment, we vacate the trial court's ruling as to the plaintiffs' claim for attorney fees and expenses and remand for proceedings consistent with this opinion.

*Judgment in Case Nos. A18A1552, A18A1553, and A18A1554 affirmed. Judgment in Case Nos. A18A1508 and A18A1555 reversed in part, vacated in part, and case remanded. Dillard, C. J., and Mercier, J., concur.*

19